## BROOKS v. THE STATE OF OHIO.

*Criminal law—First degree murder—Duty of court to assign
counsel for defendant—Section 13617, General Code—Right
to withdraw plea of guilty entered before counsel as-
signed.*

1. Under Section 13617, General Code, providing that in case
accused is without or unable to employ counsel the court
shall assign him counsel, it is the duty of the trial court
to assign counsel, before arraignment, to one under in-
dictment for first degree murder, where such prisoner noti-
fies the court before arraignment that "he did not intend
to employ counsel."

2. Where one indicted for murder in the first degree, upon
arraignment and without counsel, states that he does not
intend to employ counsel and pleads guilty to the crime
charged in the indictment, and after arraignment the court
appoints counsel for him, it is an abuse of judicial dis-
cretion for the court to overrule a motion filed there-
after, and sworn to by the accused, requesting leave to
withdraw his plea of guilty and to enter a plea of not
guilty, which motion states as grounds therefor that at
the time he entered his plea of guilty he was worried,
confused and frightened and did not understand the na-
ture of his plea or his rights in the matter, that he was
without counsel through a misunderstanding of his rights
in the matter, that when asked if he wanted counsel he
thought he was asked if he wanted to employ counsel
and answered that he did not, expecting the court to
assign counsel to defend him, for which reason he was
not properly advised of his rights at the time of entering
his plea, and that he was unacquainted with court pro-
cedure and did not understand the nature of his plea or
the meaning of the thing he was doing when he entered
such plea.

(Decided April 10, 1923.)

ERROR: Court of Appeals for Perry county.

*Mr. W. A. Hite,* for plaintiff in error.

*Mr. Vincent Tague,* prosecuting attorney, for defendant in error.

SHIELDS, J.   At the November, 1922, term of the Court of Common Pleas of Perry county, plaintiff in error, Charles Brooks, was indicted for murder in the first degree, in which indictment it was charged, in the usual form, that on the 27th day of November, 1922, said Brooks shot with a pistol one Henry Burns in and upon the left side of his head, with intent to kill, causing a mortal wound, from the effects of which he died.   Upon arraignment, the plaintiff in error entered a plea of guilty to the crime charged in the indictment, and afterward, and before sentence, a motion was filed in his behalf to permit him, for reasons stated therein, to change his plea of guilty to a plea of not guilty, which motion was overruled.   Thereupon evidence was taken for the purpose of enabling the trial court to determine the degree of the crime, under authority of Section 13692, General Code, and the court found and adjudged the plaintiff in error guilty of murder in the first degree and sentenced him according to law.   Proceedings are instituted to reverse that judgment and sentence by a petition in error filed for that purpose in this court, which contains numerous assignments of error, as set out therein, but for obvious reasons, in view of the conclusion arrived at by this court, we deem it necessary to discuss but two of the grounds so assigned, namely, the first and second, which might well be merged in one assignment of error under the second ground, namely, abuse of judicial discretion in overruling the motion of the

plaintiff in error for leave to withdraw his plea of guilty and substitute therefor a plea of not guilty.

Barring the evidence taken upon the hearing by the trial court to determine the degree of the crime, the bill of exceptions contains a full record of the proceedings had in the court below, including a statement of the court, indicating the several steps taken in the case from the time the indictment was presented until the case was disposed of. While said statement is *ex parte,* still it is unchallenged, and is to be regarded as a part of the record in the case, and is so treated by counsel for the plaintiff in error in argument.

Assuming, then, that such statement details the several steps taken in the case, was the motion properly overruled? Or, putting the question conversely, was it not the legal right of the plaintiff in error to be allowed to withdraw his plea of guilty, and to be granted a trial by jury, under the circumstances appearing in the motion and his affidavit made thereto in support of the same? He was indicted for the highest crime known to the law, and by the same law he is condemned to die in the electric chair. The law is exacting, but it is nevertheless charitable and merciful. In its method of procedure in the trial of criminal cases it clothes the accused with the presumption of innocence, which continues as his sacred protection until overcome by contervailing proof, and it demands of the state proof of guilt beyond a reasonable doubt before claiming the liberty or life of the accused. But while this is true with respect to one charged with crime, who elects to be placed upon trial, the Legislature of the state has also provided in Section 13692, General Code:

"If the offense charged is murder, and the accused is convicted by confession in open court, the court shall examine the witnesses, determine the degree of the crime, and pronounce sentence accordingly."

It will thus be seen that the right of trial by jury may be waived by the accused, the constitutionality of which legislative enactment has recently been passed upon by the Supreme Court of this state in the case of *State* v. *Habig,* 106 Ohio St., 151. But does such waiver in any wise lessen his statutory rights before entering such plea by confession? He is entitled to the service of a copy of the indictment before arraignment, and under Section 13617, General Code, it is provided:

"After a copy of the indictment has been served or opportunity had for receiving it * * * the accused shall be brought into court, and, if he is without and unable to employ counsel, such court shall assign him counsel, not exceeding two, who shall have access to such accused at all reasonable hours."

Without stopping to comment on this humane statutory provision, let us proceed at once to consider the proposition raised by the petition in error, namely, Was the plaintiff in error accorded his legal rights by the ruling of the court below on the motion, or, as claimed in his behalf, was there an abuse of discretion on the part of the court in refusing to allow him to change his plea under said verified motion? According to the statement of the court, the accused was first brought into court on December 8, when "the court stated to the defendant the nature of the charge made against him by the grand jury. He further

said to him at that time that he did not want him to plead at this time, and asked him if he had employed counsel. The defendant told the court that he had not been able to do so. The court asked him then if he had money to employ counsel and he said that he had. The court asked him at that time if he wanted the court to employ counsel for him and he said no, he preferred to employ his own counsel. The court turned him back to the sheriff, without bond, and placed at his disposal the telephone, telegraph and mails, and also the bailiff and sheriff to get him in communication with any attorney that he might see fit to communicate with.''

It further appears that on Sunday, December 10, the accused, after learning what employment of counsel for his defense would amount to, sent a communication to the court, through the sheriff of Perry county, which was delivered, that he would not be able to raise the money to employ an attorney for his defense and that he would accept any attorney that the court would appoint for him.

In its statement the court says that the accused was again brought into court the following day, namely, on Monday, December 11, when the court said to him ''that the sheriff had informed him he did not intend to employ counsel and he said that that was correct. He was then arraigned, the court asked him to stand up, and he did so, and the indictment was read to him, and the court asked him if he understood the indictment, knew what it meant, and he said he did, and the court thereupon asked him what was his plea, guilty or not guilty, and he said he was guilty.'' After ar-

raignment, the accused was informed by the court "that he would appoint counsel to look into his case," and, further, "that an attorney would be appointed who would call on him in the jail," etc., after which the court appointed W. A. Hite, Esq., as his counsel. By referring to the court's statement it will be noticed that the sheriff's communication to the court as to the desire of the accused in the matter of his employing counsel was evidently misunderstood by the court, for the court stated he had been informed by the sheriff that accused did not intend to employ counsel, whereas the record recites that the sheriff told the court that the defendant would not be able to raise the money to employ an attorney and that he would accept any attorney that the court would appoint for him. Whatever the fact in this respect, it appears that as soon as counsel appointed for the accused could have an interview with his client, and as soon as action could be had upon the advice of such counsel, as the result of that interview, the motion, sworn to by the accused, was filed, which motion and affidavit are as follows:

"Now comes the defendant, by his attorney, W. A. Hite, assigned to defend him by the court, and moves the court for leave to withdraw his plea of 'guilty,' entered by him of December 11, 1922, and to enter a plea of 'not guilty' for the following reasons:

"1. That at the time he entered said plea of 'guilty' he was worried and confused and frightened and did not properly understand the nature of the plea and of his rights in the matter.

"2. That at the time he entered said plea of 'guilty' he was without the advice of counsel by

reason of not understanding his rights in the matter. That he had advised the court that he was able to employ his own counsel, until he found out the probable cost, when, on consulting with his family, he found that he would be unable to pay that amount of money or obtain that amount. That he then attempted to send word to the court that he was unable to obtain his own counsel and would accept any counsel the court assigned to defend him, and when he was taken into court on December 11, 1922, and asked if he wanted counsel, by reason of his worried condition of mind, he thought he was asked if he wanted to employ counsel, and he answered that he did not, meaning that he did not want to employ counsel, but expecting that the court would assign counsel to defend him, supposing that his message had been delivered to the court and not knowing that he ought to have made that statement in open court, and for the reasons stated above, he was not properly advised of his rights at the time of entering his plea, and did not understand the nature of the plea.

"3. That he is an uneducated man, unacquainted with court procedure and did not understand the meaning of the thing he was doing when he entered said plea.

"(Signed)    W. A. HITE,
"Attorney for defendant.

"State of Ohio, Perry County, ss.

"Charles Brooks, being duly sworn, says that he is the defendant herein, and that the facts and allegations in his foregoing motion are true.

"(Signed)    CHARLES BROOKS,

"Sworn to and subscribed before me this 13th day of December, 1922.

(Notarial seal.)

"W. A. HITE, *Notary Public.*"

From the foregoing it appears that the accused when first brought into court was of the opinion that he had property that would enable him to employ counsel of his choice, and so stated, but after learning what his defense would cost him abandoned that idea and accordingly sent a message to the court with the request that he assign him counsel. Evidently he recognized the necessity of having counsel, as did the court, for in its statement the court said that "the court assumed to know that he would not be able to conduct his own defense." Of course, if a defendant charged as the accused here was charged, was able to procure and had procured counsel of his own choice before his arraignment, he need not invoke the benefits of Section 13617, General Code, nor would the court after making such inquiry of him, under such circumstances, undertake to assign him counsel. But how was it here in this instance? The plaintiff in error was indicted for first degree murder. At first he stated that he would employ his own counsel. Afterward, and before arraignment, he ascertained that he was not able to employ counsel for his defense, and so advised the court, as the sheriff states, or, as the court states, "he understood that he did not intend to employ counsel." What, then, was the duty of the trial court in respect to providing accused with counsel *before* his arraignment? Was it his duty to assign him counsel? Section 13617 reads: "If he is without and unable to employ counsel, such court shall

assign him counsel, not exceeding two, who shall have access to such accused at all reasonable hours." When? Not after, but before, his arraignment, because counsel is assigned to examine the indictment and advise him of the charge therein stated, before his plea is taken. This statute contemplates that counsel shall be assigned from the inception to the termination of a homicide case, having, in the language of the statute, "access to such accused at all reasonable hours." Section 10, Article I, of the Bill of Rights, also guarantees one charged with a capital offense the assistance of counsel, reading, as it does, that "the party accused shall be allowed to appear and defend in person and with counsel." How was it here? Although indicted for a crime for which he was liable to electrocution, the accused did not see or have the benefit of counsel from the time he was first arrested, charged with this crime, until after he had been arraigned and entered a plea of guilty to the indictment, and just prior to arraignment it was stated he represented to the court that "he did not intend to employ counsel." Granting that the message he sent to the court through the sheriff was so understood, was there not a duty resting upon the court under the statute to assign him counsel for his defense under this indictment for first degree murder? We think there was, and, under the section referred to, we further think that it was a fundamental right; that it was a duty under a statute whose enactment was inspired by humane consideration for the indigent.

Was there an abuse of judicial discretion in overruling the motion of the accused, verified as it was, for leave to enter a change of his plea to

the indictment? Of course courts have fixed rules of procedure in all trials, which cannot be disregarded at will, and it is not too much to say that both the law and courts aim to afford one charged with crime his legal and constitutional right, namely, a fair trial. Such is the policy of the law, and in its administration we believe that courts have uniformly sought to so execute it, but in the wide domain of thought and judicial investigation our minds do not always travel in the same direction, nor do we always reach the same legal conclusion under the same state of facts. But in the administration of the criminal law, especially where the life of a human being is at stake, the moral responsibility is increased by the jealous care with which the law regards life, and the trial of one thus charged calls for the strictest observance of the statutory provisions made for the protection of such life. Following this line of thought, what do we meet with in respect to this motion? True, the accused at first said that he did not desire counsel assigned him, but in his verified motion he stated that he was at that time under a misapprehension as to the expenses incident to the employment of counsel, that he was depressed and laboring under excitement, that he was without counsel, that he did not fully understand and realize the nature and character of the crime charged in the indictment, nor the consequences of a conviction by confession under the same, and that he therefore asked leave of the court to change his plea to the indictment from guilty to not guilty. Under these circumstances, what duty did the court owe to the accused and to the state? Here was a life at stake, where the accused had ignor-

antly entered a plea, as he claims, and was asking
the privilege of changing that plea, because in the
judgment of his counsel he had mistakenly entered
such plea—counsel in whom the court had confi-
dence sufficient to induce his selection for the pris-
oner's defense, and whose selection is shown to
have been well justified by his skillful and efficient
services in the case. If the accused was guilty as
charged, how could the ends of public justice be
defeated by his trial by a jury? And if not guilty
as charged, why should he suffer a penalty for a
crime of which he was not guilty under the law?
Neither the interests of the community nor of the
state could have suffered by permitting him to
change his plea, for, if guilty, the state would have
had the right to establish the fact, and, if inno-
cent, or guilty of a lesser crime than that charged,
opportunity should have been granted to him to
test the issue raised by the indictment. Although
stern and unrelenting are the demands of the law
against those who disregard and violate it, the se-
curity of society lies in the orderly administration
of the law in the interest of public justice. If the
statements contained in the motion are to be taken
as true, and they are unchallenged by any counter
affidavit or other proof on the grounds specifically
referred to, why should he be denied the right of
trial by jury, to have his guilt or innocence deter-
mined by a jury, as in other cases?

Counsel for the state argue that the defendant
below was precluded from reopening the case after
his plea of guilty was entered, because such plea
was a finality. The law is not so technical, espe-
cially when dealing with the liberty or life of a
citizen, and in the trial of a case it is recognized

that the law delegates to the trial court discretionary power as to the order in which the evidence may be admitted.  Why, then, should the accused be denied the privilege of changing his plea, when, as he claims, it was made under an ignorant mistake as to the manner of entering a plea in a first degree murder case?  It would seem that the assignment of counsel for his defense after arraignment would be of little or no avail to him if the plea of guilty was to remain upon the record, for, under such plea, the degree of the crime only was to be inquired into; not whether or not he was guilty, but only the degree of his guilt was to be determined.

On behalf of the state we are cited to the case of *Lee* v. *State,* 32 Ohio St., 113, which was an indictment for a misdemeanor, to which the defendant first entered a plea of not guilty, then withdrew such plea and entered a plea of guilty. Afterward he sought to withdraw the plea of guilty and enter a plea of not guilty, which the court, in the exercise of a judicial discretion, refused to allow him to do, and the apparent reason for a change of his plea was the intervention of a second indictment found against him pending the unpaid judgment on the first indictment, a totally different case in principle from the case at bar, on the facts, and, although involving the inherent power of the court to exercise judicial discretion, it seems that the court felt called upon in vindication of its own prerogative to refuse the last application made, because of the change of the plea then already tendered, which it appears was founded upon a misapprehension of facts.  The case cited furnishes an apt illustration of the oft-

repeated saying that "a party should not be permitted to trifle with the court in deliberately entering a plea of guilty one day and capriciously withdrawing it the next."

While the question here made has not been directly passed upon by the courts of this state, we find kindred questions, if not the same, passed on in other jurisdictions and treated at length in several of the textbooks on criminal procedure, among them 2 Bishop's Criminal Procedure (2 ed.), Section 798, wherein it is laid down:

"The practice of withdrawing one plea to make way for another, heretofore explained, is especially common where the defendant has improvidently pleaded guilty. In most of our courts, where leave to substitute not guilty is asked in a reasonable time, it is granted pretty nearly as of course. Yet it is sometimes refused; and being a matter of judicial discretion, relief will not ordinarily be granted in the upper court, but it will be in a case of abuse of the discretion, even where, after a defendant has pleaded guilty, has moved in arrest of judgment, and his motion has been overruled, the court, if justice requires, will allow a substitution of not guilty for guilty."

The same doctrine is to be found in 8 Ruling Case Law, 111, Section 77, and Underhill, Criminal Evidence, Section 237.

While it is conceded that a change of plea rests in the discretion of the court, such discretion should not be exercised arbitrarily, but should rest on settled and irreversible principles of justice, with a due regard to existing conditions. In discussing this subject it is laid down in 16 Corpus Juris, at page 398:

"The withdrawal of the plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. Therefore the court ordinarily will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act * * * or if it appears that the plea was entered under some mistake or misapprehension."

In *Pope* v. *State,* 56 Fla., 81, 47 So. Rep., 487, it is held:

"While the trial court may exercise discretion in permitting or refusing to permit a plea of guilty to be withdrawn for the purpose of pleading not guilty, yet such discretion is subject to review by an appellate court.

"A defendant should be permitted to withdraw a plea of guilty given unadvisedly when application therefor is duly made in good faith and sustained by proofs, and proper offer is made to go to trial on a plea of not guilty.

"The law favors trials on the merits; and if the discretion of the trial court is abused in denying leave to withdraw a plea of guilty and to go to trial on the merits, the appellate court may interfere."

The *Pope case* then cites *Krolage* v. *People,* 224 Ill., 456, wherein under a statute of that state it is held: "Leave to withdraw a plea of guilty should be granted where the ends of justice will be best subserved by permitting a plea of not guilty in its stead, and particularly where the consequences of the plea were not fully explained to

the defendant, who claims that he did not under-
stand the same.''

In *Dobosky* v. *State,* 183 Ind., 488, it is held:

"Where the record clearly discloses that the
trial court abused its discretion in refusing to per-
mit an accused to withdraw a plea of guilty, the
court on appeal will review the ruling and correct
the error, even where the application for such leave
is made after judgment."

In *State* v. *Stephens,* 71 Mo., 535, in the course
of the opinion, the court holds, at page 536:

"The law is not composed of a series of snares
and pitfalls for the unwary, neither does it favor
what Judge Bliss terms 'snap judgments.' *Hens-
lee* v. *Cannefax,* 49 Mo., 295. If these remarks
apply in a civil case, then *a fortiori,* do they apply
in a criminal prosecution, where the liberty of the
prisoner is at stake.

"Courts have always been accustomed to exer-
cise a great degree of care in receiving pleas of
guilty, in prosecutions for felonies, to see that
the prisoner has not made his plea by being mis-
led, or under misapprehension or the like."

In the *City of Salina* v. *Cooper,* 45 Kan., 12, on
page 15, the judge speaking for the court says:

"All fairness should be accorded to a defendant
in a crimnial case, in every stage of an examination
or trial. No advantage should be taken on ac-
count of his being in court without counsel. It
always should be one of the first duties of a court,
where a defendant is charged with a crime and is
about to be called upon to plead, to inquire whether
he has or is able to procure counsel; and if not,
and he desires it, to see that he has an attorney
to represent him. When a plea of guilty has been

entered against a defendant, who is without coun-
sel, and there is a question as to whether he in-
tended to plead guilty, the court should permit the
withdrawal of such plea in furtherance of the
substantial rights of the defendant."

In *State* v. *Maresca*, 85 Conn., 509, it is held:

"If an accused, unrepresented by counsel, pleads
guilty without fully understanding the questions
propounded to him and the significance and effect
of his answers and of his plea, the sentence there-
upon imposed should be opened and he should be
permitted to withdraw his plea."

In *United States* v. *Dixon*, Federal Cases, No.
14968, it is held:

"The court will suffer the prisoner to retract
his plea of guilty in a capital case, and plead not
guilty."

In *Deloach* v. *State*, 77 Miss., 691, 27 So. Rep.,
618, the court, in discussing the subject of a change
of plea of one charged with a felony, says:

"The defendant should be permitted to with-
draw his plea of guilty, when unadvisedly given,
where any reasonable ground is offered for going
to the jury. This is a matter within the discre-
tion of the court, but a judicial discretion which
should always be exercised in favor of innocence
and liberty. All courts should so administer the
law and construe the rules of practice as to secure
a hearing upon the merits if possible."

In *People* v. *Miller*, 114 Cal., 10, while conceding
that application for a change of plea rests in the
sound discretion of the trial court, in discussing
such application the court says at page 16:

"The law seeks no unfair advantage over a de-
fendant, but is watchful to see that the proceed-

ings . under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it."

An interesting case on the subject under discussion is *Gardner* v. *People,* 106 Ill., 76, where it appears that a young man who had lately come to this country from Germany, and who was ignorant of the English language, was indicted for murder, and, without the appointment and advice of counsel, entered a plea of guilty through an interpreter. The court then pronounced the sentence of death and afterward refused an application of the defendant to withdraw his plea. In passing upon the case, at page 84, the Supreme Court, among other things, said:

"We have no doubt the accused understood he was charged with the killing of the deceased, and also that he did not wish to deny that fact; yet, at the same time, we think it highly improbable that he understood the difference between a charge of murder and a mere charge of taking life, or that one might be proved guilty of killing another and yet not be guilty of any offense at all, or at least of the offense of murder. Even admitting the court would be justifiable in entering a plea of guilty upon admissions thus obtained (which we have just seen it would not), it is clear the admission of the accused in this case that he killed

the deceased, without a more satisfactory account of the attending circumstances, was not sufficient, to authorize the entry of that plea. The killing, as is well understood, standing alone, does not constitute the crime of murder, but, rather, a single link in the chain of testimony to establish. that crime.''

This case illustrates the necessity of an accused, having the benefit of counsel before entering a, plea in a first degree homicide case, that he may know of the nature of the charge and of the conse-, quences of such plea—that he may be advised of the constituent elements of the charge, in law;, and that, if guilty, the law imposes the punish-, ment of death. It would seem that the method suggested is but the application of the rule of reason and is nothing short of the exercise of a sound judicial discretion. Lord Mansfield says:

''Discretion, when applied to a court of justice, means sound discretion, guided by law.''

The humanity of the law does not demand the, forfeiture of human life without the benefit of trial, if requested. In the case above cited, we have a human being standing at the bar of justice, charged with first degree murder, pleading for the con-, stitutional right of being tried by a jury of his peers. Was it the exercise of judicial discretion to deny him that privilege? The court answered this in the negative.

We do not feel called upon to further extend this opinion in discussing this feature of the case, except to add that our investigation of the authorities generally, in the reported cases in the various states, shows that they are substantially uniform in holding that while it is in the discretion of the

trial court to permit an accused to withdraw his plea of guilty, and to substitute therefor a plea of not guilty, yet that discretion is a judicial one, and, if a reasonable ground be given therefor, should be exercised in favor of the trial on its merits. For the reasons given we are of the unanimous opinion that reasonable ground was here shown why the plaintiff in error should have been allowed to change his plea from guilty to not guilty, and the action of the trial court in refusing to permit the same to be done is held to be an abuse of discretion for which the judgment of that court is reversed, and that court is instructed to grant the motion of plaintiff in error to withdraw his former plea of guilty to such indictment and to substitute therefor a plea of not guilty. That court is also instructed to set aside its judgment in this behalf against the plaintiff in error.

The clerk of courts of Perry county is instructed and directed to make the usual order for the return of said Charles Brooks to the custody of the sheriff of Perry county, there to remain to await further proceedings in the case.

Having reached the above conclusion, which will result in the case being remanded for trial, for obvious reasons of propriety we omit expressing an opinion on the other questions raised.

*Judgment reversed, and cause remanded.*

PATTERSON and HOUCK, JJ., concur.