(No. 20023

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN JANKOWSKI, Plaintiff in Error.

*Opinion filed April 17, 1930—Rehearing denied June 17, 1930.*

EUGENE L. McGARRY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

John Jankowski, upon his plea of guilty to an indictment of three counts, the first charging larceny as bailee, the second charging larceny by embezzlement as attorney and agent for the Polish Roman Catholic Union, and the third charging larceny, was sentenced by the criminal court of Cook county to imprisonment in the penitentiary at Joliet and has sued out this writ of error.

The plaintiff in error pleaded not guilty and on May 6, 1929, the trial began. It progressed to May 9, when a juror was withdrawn by agreement, the record reciting: "Defendant withdraws plea of not guilty heretofore rendered and enters plea of guilty. Defendant advised by the court of the effects of rendering said plea. Testimony heard. Court finds defendant guilty of embezzlement in manner and form as charged in the indictment. Considered, ordered and adjudged by the court that the said defendant, John Jankowski, is guilty of the crime of embezzlement, value of property $9000, upon indictment in this cause and the said plea of guilty." Motions to vacate the sentence and to release the defendant on probation were made and were continued until May 16, when they were denied. On May 22 a motion in writing was made to vacate the sentence and for leave to withdraw the plea of guilty and enter a plea of not guilty. It was continued from time to time, affidavits were filed in support of it, and on

June 28 it was overruled. The motion was supported by the affidavits of the plaintiff in error, Samuel Rothblum and Paul L. Kostowski. The affidavit of the plaintiff in error stated that he is a practicing lawyer of this State, whose practice has been limited to matters concerning real estate, and he has had no experience in the practice of criminal law; that for some years he was retained as counsel for the Polish Roman Catholic Union, a benevolent organization operating a fraternal insurance association with assets of about $12,000,000, and conducted many foreclosure suits and other matters relating to the sale and transfer of real estate and contracts for buildings; that thousands of dollars have passed through his hands which he has disbursed honestly, as he believes; that he was furnished an office in connection with the offices of the union and received an annual retainer for his services, except in cases where he had to appear in court, in which cases he charged the union a fee for his services; that his account with the union was an open account; that there exist, and have existed for some years in the union, several factions, each seeking control of the organization; that with which the plaintiff in error was allied was in control of the organization prior to the convention in September, 1928, to which he was a delegate; that in April, 1928, a request was made of him for an accounting; that at that time many of his files were removed from his office and misappropriated by persons unknown to him; that the faction with which he was allied was defeated at an election and he and other officers were deposed. The affidavit further states that on April 28, 1928, special counsel was employed to investigate the transactions and conduct of the plaintiff in error with the union, and a demand was made by such counsel for an accounting by the plaintiff in error of fees charged by him for services rendered; that by reason of the removal of his files he was unable to ascertain correctly whether he was indebted to the association or it to him; that a demand was made that

he pay to the association an exorbitant amount of money, and on his refusal to pay anything until an impartial, fair and complete audit was made, he was threatened with arrest; that he never willingly or knowingly misappropriated any of the funds of the union, and if after an impartial audit it appears that he is indebted to the union he will pay the amount of his indebtedness, and he so informed the officers of the union. The affidavit continues that the indictment was returned on January 18, 1929. One of his friends furnished bail and he appeared in court whenever his case was called. His funds were depleted owing to loss of clients, caused by attacks made on his honor and integrity in a newspaper owned by the union, and he was unable to pay the fee demanded by certain well known criminal lawyers to undertake his defense. He was informed that his case would not be tried for some time, owing to the fact that jail cases were being called for trial and bail cases continued from time to time. His case was called for trial May 6, and being without necessary funds he was unable to procure counsel. He informed the court that he had made no preparation for trial but was compelled to go to trial without counsel. He selected a jury and later prevailed on Benjamin J. Cossman to represent him. Cossman filed his appearance and entered motions to quash the indictment and to be furnished with a bill of particulars, which were denied. John J. Rybicki, an attorney representing the union, assumed a friendly and patronizing attitude, informed plaintiff in error that the union was not looking for a pound of flesh, had no desire to see him go to the penitentiary, would do everything it could to get the matter straightened out, and in the presence of the assistant State's attorney and Cossman advised plaintiff in error that if he would plead guilty to the charge and pay to the union the amount, if any, found to be due, he would recommend to the court that the plaintiff in error be placed on probation and no charges would be filed against him for disbarment.

562

The proposition was adopted by the assistant State's attorney, who said he also would recommend probation for the plaintiff in error if he would plead guilty. The plaintiff in error informed the assistant State's attorney and Rybicki that he was unfamiliar with the practice in the criminal court and the rules of the criminal law and would be advised by his attorney in the matter. Cossman advised him that on the recommendation both of the complaining witness and the assistant State's attorney the court would place him on probation. The plea of not guilty was withdrawn and that of guilty entered. Thereupon Rybicki assumed a hostile attitude and demanded $9000 of the plaintiff in error as restitution, and informed him that unless he paid that amount immediately he would insist that the plaintiff in error go to the penitentiary. The plaintiff in error and Cossman told Rybicki that this demand was contrary to his proposition and promise; that he, the plaintiff in error, did not owe the union any such sum of money; that he would not have pleaded guilty had he not believed that Rybicki would comply with his promise. The affidavit further stated that the plaintiff in error was tricked into pleading guilty and misled by the promises to believe that the union and the assistant State's attorney would recommend that he be placed on probation. When he filed his plea of guilty the court said that he could send him to the penitentiary, but he did not understand or believe that the court would do so or the length of time the court could send him there, inasmuch as his attorney and the assistant State's attorney had told him that a plea of guilty is only a matter of form and when the complaining witness and the State's attorney recommend it the court always grants probation, and he was under the impression that the arrangement of the attorney for the complaining witness, the State's attorney and his own attorney would supplement the sentence of the court. The court did not disclose to him that the jury could do no more to him, if it found him guilty, than the court could

do if he pleaded guilty. The plaintiff in error believes he has a good defense on the merits of the case and would not have pleaded guilty except for the promises which were so made to him.

The affidavit of Samuel Rothblum, who was a court reporter at the trial of the plaintiff in error, stated that he overheard a conversation among the assistant State's attorney, Rybicki, the plaintiff in error and his attorney, Cossman, in the court room during a recess of court on May 8, wherein Rybicki stated to the plaintiff in error, "The best thing for you to do is to plead guilty and I will recommend probation." The assistant State's attorney said, "I think that is the best thing you can do."

The affidavit of Paul L. Kostowski stated that he was a court interpreter employed by certain lawyers and was present at the trial of the plaintiff in error, and was also present at a conference in a corridor of the criminal court building, of the plaintiff in error, the assistant State's attorney, Rybicki and Cossman, and heard Rybicki say that if the plaintiff in error would plead guilty, he and the officers of the union would recommend that the court place him on probation and no charges would be filed against him before the bar association. Cossman said, "Pleading guilty is only a matter of form," and, "When a complaining witness and the State's attorney recommend probation the court always grants it."

There is no bill of exceptions showing what occurred when the plea of guilty was entered and judgment was rendered. On the hearing of the motions to withdraw the plea of guilty and enter a plea of not guilty, counsel for the plaintiff in error offered in evidence what purported to be a transcript of the proceedings before the court at the time the plaintiff in error pleaded guilty. This was not competent, but no objection was made to it and a part of it was read. The part of the transcript which counsel for the plaintiff in error read showed that the court said: "You

understand in entering the plea of guilty it is admitting the charge of embezzlement, and you are subject to become imprisoned, as provided by law, from one to ten years at Joliet or some other penal institution. No promise or bargaining or other disposition is made of the case; nothing that has been said or done has any effect upon the court; and knowing this you still persist and want to enter a plea of guilty?" and the defendant answered, "yes." The court then said, "All right; let the record show that the defendant was warned of the penalty and persists in his plea of guilty to the charge."

If the plaintiff in error has a defense to the criminal charge his affidavit does not disclose it. In substance he states that if he has any money of the union he will re-pay it as soon as its amount is disclosed by an audit. Some of his files have disappeared and he cannot learn what the condition of his account with the union is. His affidavit does not disclose that there is any chance that he will ever learn the condition of his account from files which had been in his office. His affidavit discloses that he pleaded guilty because of promises made by Rybicki and the assistant State's attorney and the advice given by Cossman, knowing that the court could sentence him to the penitentiary, but, because of the advice of his attorney, not believing that the court would do so. His trial had been going on for several days and he knew that the trial judge was informed of what the trial had disclosed. As a lawyer he must have known that no promise of Rybicki or the assistant State's attorney would be binding on the court. In fact, the court so informed him before his plea was accepted. Upon the hearing of the motion to vacate the sentence and for leave to withdraw the plea the bill of exceptions taken by the plaintiff in error shows the following statements of the court and remarks of counsel for the plaintiff in error:

Mr. McGarry: "There was a motion made to vacate sentence and grant leave to withdraw the plea of guilty.

The court: "Have you information as to what transpired—

Mr. McGarry: "Pardon me.

The court: "Of course, you weren't present when Mr. Cossman was in chambers. Jankowski wanted to plead not guilty, so the State had something like four witnesses, probably to refute and disprove several statements that the defendant, Jankowski, made from the witness stand. After we spent four days in this case I presumed to let the thing pass. He said they wanted to plead guilty—that's the thing they wanted to do. At that time Mr. Jankowski said, so far as he was concerned that was the best thing to do and he would have no more objection—he wanted to plead guilty; but they made a motion for probation, for recommendation to the court. He wanted probation. In Cossman's presence I stated, no matter what recommendation was made by any attorney, the State's attorney or the attorney for the complaining witness, or anybody else, I was not guided by. If the defendant had taken the plea of guilty to the charge at the first instance I would have given him probation and given him a chance to make restitution, but I heard him on the witness stand, and I heard him get tangled up in cross-examination and I heard his statements refuted, and so far as I am concerned I say I am not going to give him probation. If you want to go up on the record of that, that is your privilege, but that's how I feel about it.

Mr McGarry: "There isn't any question about it. No question about the court's attitude—the court's frame of mind. The motion is now made, however, to vacate the sentence. Mr. Cossman will have to admit that he never imparted that information to his client. Jankowski wasn't present in your chambers, was he, when this conference was had?

The court: "Jankowski heard my statement to him here in court and he admitted that the amount of $9000 was cor-

rect, and I gave them an opportunity to see if they wanted to bring it down and would agree on anything under $9000, because over $200 he would not be eligible under the law. The motion is denied."

To have vacated the judgment and permitted the plaintiff in error to withdraw his plea would have served no useful purpose. For anything appearing to the contrary the judgment was just. In spite of his protestations to the contrary the plaintiff in error knew the penalty incurred and that the court would be bound by no agreements. He chose to take the chance that probation would be granted. His counsel informed him that probation was never refused where requested by prosecuting attorney and complaining witness, and if the affidavit is true, Rybicki and the assistant State's attorney promised to ask it if restitution were made after an audit should show the amount. The plaintiff in error affirms that an exorbitant amount was asked, but not what the correct amount was or that he had tendered or would tender the correct amount. He now wishes to go back and start over and try another course. The case of *Krolage* v. *People*, 224 Ill. 456, upon which plaintiff in error relies, does not furnish any basis for reversing the judgment of the trial court. In that case the court merely inquired of the defendant whether he understood that if he pleaded guilty the court would sentence him to the penitentiary, and the defendant thereupon informed the court that he did so understand, and thereupon the court ordered the plea of guilty to be entered without any further explanation of the consequences of the plea. It was held that this inquiry, alone, and the defendant's answer, constituted no explanation whatever on behalf of the court. In this case the plaintiff in error was informed by the court that his plea of guilty was an admission of the charge of embezzlement and of the limit of the authority of the court to punish him, and he was advised that no promise or bargaining or recommendation by any attorney, whether State's attorney,

attorney for the complaining witness or anybody else, would have any effect on the sentence.

The rule is, that where it appears that a plea of guilty was entered through a misapprehension of the facts or the law, or where there is doubt of the defendant's guilt, or he has any defense at all worthy of consideration by a jury, or where the ends of justice will be best served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and the substitution of a plea of not guilty. (*People* v. *Byzon,* 267 Ill. 498; *People* v. *Walker,* 250 id. 427; *People* v. *Kleist,* 311 id. 179.) Whether a plea of guilty shall be permitted to be withdrawn and plea of not guilty entered rests within the sound discretion of the court. If it appears that the court has abused its discretion the judgment will be reversed, but if the plea is understandingly made, the court may, in the exercise of a sound discretion, refuse permission to withdraw it. (*People* v. *Stamatides,* 297 Ill. 582.) In *People* v. *Walker, supra,* we held that the court should vacate the judgment on a plea of guilty and permit the plea to be withdrawn where it appears that the plea was entered unadvisedly or in consequence of misrepresentation of counsel, and in *People* v. *Byzon, supra,* that a plea should be permitted to be withdrawn, the defendant being eighteen years of age and having relied on the statement of the officer who had arrested him. The mere fact, however, that an accused, knowing his rights and the consequence of his act, hoped or believed that he would receive a shorter sentence or a milder punishment or some other favor by entering a plea of guilty than that which he might receive upon his conviction by a jury presents no ground for permitting the withdrawal of the plea of guilty. *People* v. *Bonheim,* 307 Ill. 316; *People* v. *Ensor,* 319 id. 255.

The trial court did not abuse its discretion in denying the motion, and its judgment will be affirmed.

*Judgment affirmed.*