(No. 20859.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAZEL JOHNSON, Plaintiff in Error.

*Opinion filed October 23, 1931.*

A. MORRIS WILLIAMS, CHARLES L. RICE, and WILLIAM B. BRUCE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, and JOHN W. EVANS, State's Attorney, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

On the evening of January 23, 1931, at about seven o'clock, Hazel Johnson, a twenty-three year old negro, shot and killed William D. Keller. The deceased was a Wabash railway patrolman in its yards at Decatur and also a special deputy sheriff of Macon county. Shortly prior to the killing Keller had arrested Johnson and another negro, Golly Morgan, when he discovered them with a sack containing brass parts stolen by them from an engine in the yards. Keller ordered the two men to march ahead of him. They proceeded across numerous railroad tracks until they reached East Sangamon street, which extends east and west, with a row of houses on the north side and the railroad yards on the south side of the street. Keller was armed with a revolver while the two negroes were unarmed. While they were walking east in the first block

Morgan broke away, ran into a yard, around a house and made his escape. After Morgan entered the yard Keller ordered him to halt and shot in his direction but with no effect. Soon after the escape of Morgan, Johnson whirled on Keller, grabbed the gun out of his hand after several minutes of scuffling, ran four or five steps, then turned and shot Keller.

The shooting occurred under or near a street light on East Sangamon street and was witnessed by several persons whose testimony is in the record. Mrs. Eulah Howell, residing at 1604 East Sangamon street, was attracted by loud talking and on looking out her door saw three men walking by her home. She saw one of them break away from the others and heard a shot fired as this man disappeared around her house. In a few moments she heard three or four more shots but did not see Keller and Johnson at the time of the last shooting. Another witness, Mrs. Louise Delaughter, living at 1562 East Sangamon street, after hearing a shot fired went to her door and saw two men running and then saw the man in front turn and fire three or four shots at the man in the rear. The principal witness, James G. Webb, a Wabash fireman, was on a locomotive about 125 feet away. Upon hearing a shot he looked out to the street and there saw Johnson running. He saw Keller overtake him under the street light and saw the two men scuffle and then break away from each other. After this, Johnson ran about eight or ten feet, turned, and fired four or five shots at Keller. He testified that Keller was not following Johnson at the time he was shot. Three other witnesses, Frank Taylor, Rhoda Taylor and Charles Taylor, all negroes, testified that they witnessed the shooting from the front porch of their house, about one block away. Their attention was attracted by the first shot, when Morgan made his escape. Their testimony, in substance, was that they afterward saw Johnson and Keller struggling under the street light, and when

they broke apart Johnson ran a short distance, turned, and fired several shots at Keller.

Johnson was arrested at his home about eight o'clock the same evening. He first pretended to be sick and stated to the officers that he had been in bed all day. After his arrest, however, he made a written confession of the killing. An indictment for murder was returned against him on January 30. Upon his arraignment in court the next day, John R. Fitzgerald, an attorney of many years' experience, was appointed by the court to defend him. He first entered a plea of not guilty, but two weeks later, February 14, he was allowed to withdraw his plea of not guilty and enter a plea of guilty. At that time he was duly admonished by the court as to the consequences of such a plea but persisted therein. Three days later a hearing was held on the question of the aggravation or mitigation of the offense. Eleven witnesses testified for the People, and Johnson testified in his own behalf with six other witnesses. The court reporter was present and made a record of all the proceedings. It appears that the trial court repeatedly explained to Johnson the consequences of entering a plea of guilty for the crime of murder, that such a plea might lead to the imposition of the death penalty, and further advised him of his right to a trial by jury. At the conclusion of the hearing the court sentenced Johnson to death by electrocution. A motion was subsequently made by other attorneys in behalf of Johnson to vacate the sentence, set aside the plea of guilty, set aside the waiver of jury trial and enter a plea of not guilty, and for a trial by jury. Affidavits of Johnson and Dr. John C. Ellis, a negro leader, were filed in support of the motion. Over objections by the State's attorney the court proceeded to hear the motion and also permitted the People to file two counter-affidavits. The affidavits filed by Johnson and Ellis were to the effect that Johnson had been misled and did not fully understand the consequences of his plea of guilty, and

that he pleaded guilty because he had been told that the trial judge did not usually impose a death sentence on such a plea. After considering the motion it was denied, from which ruling this writ of error has been prosecuted.

It is first contended that the defendant did not understand the nature, effect and purport of his plea of guilty. The record shows that the trial judge was unusually careful in admonishing the defendant, not only to advise him fully as to his right to a jury trial but also in repeatedly telling him that the court might impose the death sentence as a result of his plea. It is clearly shown that the defendant was of average intelligence and fully understood the nature and effect of his plea of guilty. He was represented by an attorney of long experience and recognized ability. At the time of his arraignment the trial judge read the indictment to him and Johnson at that time said his plea was guilty. The court then fully explained to him the punishment which might be given on such a plea, and after this admonition the court permitted him to change his plea to not guilty and appointed counsel for him. Two weeks later, after he had advised with a committee of his friends, including Dr. John C. Ellis, the defendant again appeared in court and withdrew his plea of not guilty and again pleaded guilty. Again the trial judge fully explained to him his right to a trial by jury and what penalties the court might inflict on a plea of guilty to a murder charge. The record further discloses that before the trial judge received the final plea of guilty from Johnson he inquired whether any promises had been made to him, and Johnson answered in the negative, stating that he was entering his plea of guilty of his own free will even though it might bring him the penalty of death. In answer to a question by his attorney, Johnson also said that all matters concerning the meaning, effect and purport of his plea of guilty had been fully explained to him. Thus it is seen that every reasonable precaution was used to inform Johnson of his rights

and the effect of his plea of guilty and that he clearly understood its meaning and possible consequences. The entire record, including the affidavits filed in support of the motion to vacate the sentence, fails to show any circumstances to support the contention that Johnson misunderstood the nature and effect of his plea. Whether a plea of guilty shall be permitted to be withdrawn after sentence has been pronounced rests within the sound discretion of the trial court. If it appears that the court has abused its discretion the judgment will be reversed, but if the plea is understandingly made, the court may, in the exercise of sound discretion, refuse permission to withdraw it. *People* v. *Jankowski,* 339 Ill. 558; *People* v. *Crooks,* 326 id. 266; *People* v. *Chesnas,* 325 id. 361.

The second reason advanced by the defendant for setting aside the judgment of the trial court is that he pleaded guilty under the belief that he would not receive the death penalty. No Illinois law is cited in support of this contention while there are many decisions of this court to the contrary. If an accused, knowing his rights and the consequences of his act, hopes or believes that by pleading guilty he will receive a milder punishment or a shorter sentence than he would upon a trial and conviction by a jury, and thus pleads guilty, he has no right to afterwards withdraw this plea if the sentence imposed upon him by the court is not what he supposed or believed it would be. The accused speculates upon the supposed clemency of the judge at his own peril. *People* v. *Chesnas, supra; People* v. *Ensor,* 319 Ill. 255; *People* v. *Bonheim,* 307 id. 316.

As a final contention it is urged that the sentence is not in proportion to the offense committed. The defendant entered a plea of guilty to an indictment for murder. One of the three penalties for the crime of murder is death. The sentence imposed by the court on the defendant was one of the punishments provided by law for the crime committed. In *People* v. *Krotz,* 341 Ill. 214, this court said

in answer to a similar contention: "While the verdict in this case is severe it is within the statutory limits. * * * This court cannot say that a punishment authorized by law is disproportionate to the nature of the offense unless the law itself is subject to that objection and is in violation of constitutional provisions." Where the record does not show an abuse of discretion by the trial judge this court cannot substitute its judgment for that of the trial court.

The amended affidavits filed by Johnson in support of his motion to vacate the sentence are in certain respects in conflict with the original affidavits and his testimony in open court. Johnson's sworn confession and his statement in court made no reference to any abusive language used by Keller, as is alleged in the amended affidavit. In a number of other particulars not necessary to mention, this amended affidavit was also at variance with the sworn testimony and confession previously made by Johnson. The defendant cannot impeach his own testimony by an affidavit prepared long after sentence has been pronounced. In his sworn confession, and also by his testimony in open court, Johnson not only admitted the killing but also admitted that he knew that Keller was some kind of an officer.

We have examined the entire record and reviewed the evidence heard by the trial court and find that no errors were committed which would justify a reversal of the judgment of the court below. Certain objections have been made to the effect that the judge's minutes do not show that Johnson was properly arraigned or that he was furnished with a copy of the indictment, list of jurors and witnesses. It is not material what the judge's minutes may or may not show, as they are no part of the record. The record of the clerk is before us and shows that the defendant was duly arraigned and furnished with a copy of the indictment, list of witnesses and jurors, and before entering his plea of guilty Johnson also admitted that he had received a copy of the indictment and list of witnesses.

We find no error in the record. Accordingly the judgment of the circuit court is affirmed, and the clerk of this court is directed to enter an order fixing December 11, 1931, as the date on which the original sentence entered in the circuit court of Macon county shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the warden of the Southern Illinois Penitentiary.

*Judgment affirmed.*