THEODORE GARDNER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 29, 1883.*

1. CRIMINAL LAW—*plea of guilty in capital case—of the right to withdraw the same.* A young man, about nineteen years of age, who had lately come to this country from Germany, and who was entirely ignorant of the English language, was indicted for murder, and, without the appointment and advice of counsel, confessed to the court the killing, through an interpreter, who informed the court that the accused acted and talked almost like an *idiot, and stated that he did not believe the accused fully comprehended his* real situation and hazard, whereupon the court entered a plea of guilty, and pronounced sentence of death, and afterward refused an application of the defendant to withdraw his plea of guilty. It was *held,* that the court erred, under the peculiar circumstances of the case, in accepting and entering the plea of guilty, and also in refusing to allow its withdrawal.

2. If a man of mature age, familiar with our language and institutions, and fully understanding the nature of the charge against him and the perilous situation in which he stands, should plead guilty to an indictment for murder, upon which sentence of death is pronounced, it would be within the discretion of the court to allow the plea to be withdrawn and a plea of not

guilty to be entered, and this court, under such circumstances, would not feel at liberty to interfere if the court should deny the application to withdraw such a plea.

3. SAME—*entering plea of guilty without appointment and advice of counsel.* Where a person who stands indicted for murder is not of mature age, and is wholly ignorant of our language and institutions and the perilous situation in which he stands, and is without sufficient understanding to act intelligently for himself, it is the duty of the court to appoint him counsel, and not to enter a plea of guilty without the concurrence of such counsel.

4. SAME—*examination of prisoner on being called on to plead.* The calling on one to plead to an indictment for murder can not be made the occasion for extracting from him criminating evidence against himself, and such a course is irregular and unwarranted. The court, under no circumstances, ought, on such occasion, to proceed to examine the accused with a view of determining whether the killing was murder or some other offence.

5. SAME—*effect of admissions made on such an examination.* The admission of one charged with murder, drawn out in answer to questions put to him by the court on such an examination, that he committed the act of killing in a quarrel, in which the deceased threatened to shoot him, without any more satisfactory account of the attendant circumstances or details of the transaction, even if the court was justified in thus extracting the statements of one wholly ignorant of the language, and not of sufficient intelligence to comprehend the relation or situation in which he stood, is not sufficient to authorize the court to accept and enter a plea of guilty, made without the advice of counsel.

WRIT OF ERROR to the Circuit Court of Mason county; the Hon. GEORGE W. HERDMAN, Judge, presiding. On the motion to withdraw the plea of guilty, the Hon. LYMAN LACEY presided.

Mr. HUGH FULLERTON, Mr. W. H. CAMPBELL, and Mr. H. R. NORTRUP, for the plaintiff in error:

The prisoner should have had the assistance and advice of counsel in the first instance, before the entry of a plea of guilty. Bishop on Crim. Procedure, sec. 301; Cooley's Const. Lim. 332, note 1.

Under the circumstances of this case, the defendant being wholly ignorant of our language and institutions, and not comprehending the jeopardy in which he was placed, the

admissions extorted from him can not be accepted or regarded as a confession to support a plea of guilty. In order to have, that effect, so as to justify the sentence of death, it must be deliberately made, under the deepest solemnities, with the advice of counsel, and under the protecting care of the judge. Burrill on Circumstantial Evidence, (2d ed.) 497; Greenleaf on Evidence, secs. 215, 217.

If the privilege of counsel is denied the prisoner, it is a sufficient reason for discrediting any damaging statements he may make. *Rex* v. *Ellis Ry. Z*. Mood, 432; Cooley's Const. Lim. 313; *McKinney* v. *People*, 2 Gilm. 550.

On the trial of a deaf and dumb person, in Massachusetts, we find that he was arraigned through a sworn interpreter, his incapacity having been first suggested to the court, and the trial thereupon proceeded on a plea of not guilty. *Commonwealth* v. *Hill*, 14 Mass. 207. See Wharton on Criminal Law, (3d ed.) 245.

The prisoner did not plead guilty. After the interpreter had partially explained the indictment he said he was guilty, but the interpreter said he had not fully explained the same. This was the only time the prisoner plead guilty. It is true he afterwards said he killed Mary Welter, but at no time did he say he was guilty as charged in the indictment. There was no issue formed, and he was improperly sentenced. (*Hoskins* v. *People*, 84 Ill. 87; *Johnson* v. *People*, 22 id. 377; Bishop on Crim. Procedure, sec. 798; Wharton on Crim. Pl. and Pr. sec. 414.) If he did, it was through simplicity and ignorance, and should not have been received. 2 Best on Evidence, 689, marginal; Wharton on Crim. Evidence, sec. 638.

The prisoner, after having counsel appointed, asked to withdraw his plea. Under the circumstances this should have been allowed. The court had the power to allow this privilege. *Edwards* v. *Irons*, 73 Ill. 583; 20 Ga. 674.

Mr. THOMAS MEHAN, State's Attorney, for the People:

The prisoner entered the plea of guilty after having the indictment explained to him, and receiving a copy in German, and after being admonished by the court of the consequences. of such plea.    After this the court could do nothing but render judgment thereon.    Bishop on Crim. Procedure, secs. 729, 795;  4 Blackstone's Com. 329.

The request of leave to withdraw the plea of guilty came too late, as judgment had already been passed.  *State* v. *Cotton*, 4 Foster, 143;  1 Bishop on Crim. Procedure, sec. 798.

The prisoner waived his right to have counsel appointed by his plea of guilty, for there was nothing for counsel to defend.    A prisoner in a capital case can waive a constitutional privilege.    Bishop on Criminal Law, sec. 840;  *State* v. *Gurney*, 37 Maine, 156.

Counsel also discussed the facts on which he relied for an affirmance.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 23d day of November, 1882, Theodore Gardner, a young man between nineteen and twenty years of age, of German nationality, was indicted by the grand jury of Mason county for the murder of Mary Welter, the killing having occurred on the 14th of the same month.    At the time of the homicide young Gardner lived in the family of John B. Welter, the husband of the deceased, who was also the uncle of the accused.    The prisoner had but a short time before come over from Germany to this country, and was unable to speak or understand the English language.    On the 25th, the day following the returning of the indictment into court, the accused, being formally arraigned, plead guilty to the charge, and was duly sentenced by the court to be hanged on the 12th of January, 1883.    During this proceeding the accused seems to have been without counsel, or any

one to consult or advise with as to what he should do under the trying circumstances. Later in the term,—to-wit, on the 14th of December, 1882,—and while a judge other than the one who tried the cause was presiding, the prisoner, by counsel then appointed for that purpose, made application for leave to withdraw the plea of guilty, which was overruled by the then presiding judge, on the ground he had not tried the case. Under the peculiar circumstances of this case we are of opinion this application should have been allowed, and that it was error to refuse it. Had the accused been a man of mature age, familiar with our language and institutions, and nothing in the record to create a doubt as to whether he fully understood the nature of the charge against him, and the perilous situation in which he was placed, quite a different question would be presented. In such a case, assuming everything had proceeded regularly, we would not feel at liberty to interpose. Within the limits stated it would be a matter within the discretion of the court trying the case.

But in this case, outside the considerations already mentioned, we regard the course adopted by the court in its examination of the accused, with a view of determining whether the plea of guilty should be entered or not, as irregular, and are of opinion that the facts thus elicited, when considered as a whole, in connection with the manner in which they were obtained from the prisoner, did not warrant the court in entering the plea or in pronouncing the sentence of death. It appears that upon the arraignment of the prisoner, H. R. Nortrup, a member of the bar, was, on the suggestion of the State's attorney, appointed by the court an interpreter to read the indictment to the prisoner in German, and explain to him the nature of the charge. Nortrup being sworn as an interpreter, and having read the indictment to the prisoner in German, the following colloquy occurred between him and the court:

Court: "You may read to the prisoner the indictment translated into German.

Nortrup: "Do not know that I can readily read to the prisoner the indictment translated in German, on account of the technical phrases and law terms, but I can give him the substance of it.

Court: "Very well; you may do so.

(Nortrup then explained the indictment to the prisoner.)

Nortrup: "I have explained, as best I could, the three counts in the indictment; he says he understands the charge.

Court: "You may ask him whether he is guilty or not.

Nortrup: "The prisoner says he is guilty.

Court: "Ask him if he killed Mary Welter.

Nortrup: "He says he did.

Court: "Does he understand the nature of the charges against him?

Nortrup: "He says he does; but in talking with him I did not explain so fully to him the charges as I could to write it out in German."

The court then ordered the indictment to be copied and translated into German, which was done by Nortrup. After having made out the copy, and endeavored to explain to the accused, in German, the nature of the charge, as well as he could, Nortrup, under the sanction of an oath, made a report to the court in these words:

"YOUR HONOR—I have given the prisoner a translation of the indictment, and yet it is not literal copy of it; contains the substance of it, but it is not a perfect translation of the indictment. I made it up as best I could, and gave him that copy. I have talked with the prisoner in his native tongue, and from the way he answers me, and from the statements he makes, I would suggest, as a friend of the court, that your honor appoint him counsel. I can concede that he will answer so you can enter the plea of guilty, but from the

state of his mind, and the way he appears to me in talking with him, I do not believe he understands his situation. I am satisfied he does not understand the relation of things, is wholly unacquainted with our institutions, and does not understand enough to act intelligently during the proceeding. I am satisfied that if the State's attorney had put a count for arson in the indictment he would plead guilty to that, too, he is that ignorant, and the way he answers me satisfies me that he is not in frame of mind to act for himself."

Under these circumstances, notwithstanding the killing was confessed, we are of opinion it was the duty of the court to at least have appointed the prisoner counsel, and not have entered the plea of guilty without his concurrence. But the more proper course would have been to have entered the plea of not guilty for him, as in the case of one whose sanity is questionable, or of one standing mute, and to have appointed counsel to take charge of his defence.

After some further colloquy between the court and Nortrup, the latter, being impressed with the conviction the prisoner did not fully comprehend the nature of the charge against him or fully realize his perilous situation, declined to interrogate the prisoner further, or otherwise act as an interpreter, and thereupon the court appointed L. Ringstorff to act as such. A number of questions were then asked the accused, under the direction of the court, eliciting answers admitting the killing, and also that he understood the charge, being substantially the same answers he had given before. After which the following passed between the court and Ringstorff, the interpreter:

Court: "Ask him why he killed her.

Interpreter: "He says they quarrelled.

Court: "What about?

Interpreter: "He says she said he wrote a letter,"—interpreter, puzzled, continuing,—"something about his clothes. I can not make out what he means.

Court: "Did the woman have any weapons?

Interpreter: "He says not; he says she threatened to shoot him. She said, if I did not leave she would shoot me.

Court: "Ask him how he killed her.

Interpreter: "He says he grabbed her by the neck in a handkerchief she had around her neck, then he threw her on the floor, and she was dead.

Court: "What did he tie the handkerchief around her neck for?

Interpreter: "He says he did not do that," etc.

During this examination of the accused, Ringstorff, referring to the prisoner, remarked to the court: "He talks and acts like a half idiot."

As already indicated, this inquisitorial process to which the prisoner was subjected was irregular and unwarranted. The calling on one to plead to an indictment can not be made the occasion for extracting from him criminating evidence against himself. If, under peculiar circumstances like the present, the court has doubts as to whether the accused understands the nature of the charge, the court, if able to communicate with the prisoner, should explain to him the nature of the charge, as well as the consequences of a plea of guilty; but if, by reason of being unable to speak the language of the prisoner, the court can not do so, it should appoint competent counsel for the accused, to see that the character of the charge and consequences of the plea are fully understood, before accepting such a plea,—and if, after availing itself of all these precautions and safeguards, the court is still in doubt, then, as before suggested, the plea of not guilty should be entered, and the cause submitted to a jury. Under no circumstances ought the court, in such case, to proceed to examine the accused, as seems to have been done here, with a view of determining whether the killing was murder or some other offence. This was, in effect, trying the prisoner by the court, which, of course, is wholly

incompatible with the safeguards which the law has thrown around one charged with a capital offence. We have no doubt the accused understood he was charged with the killing of the deceased, and also that he did not wish to deny that fact; yet, at the same time, we think it highly improbable that he understood the difference between a charge of murder and a mere charge of taking life, or that one might be proved guilty of killing another and yet not be guilty of any offence at all, or at least of the offence of murder. Even admitting the court would be justifiable in entering a plea of guilty upon admissions thus obtained, (which we have just seen it would not,) it is clear the admission of the accused in this case that he killed the deceased, without a more satisfactory account of the attending circumstances, was not sufficient to authorize the entry of that plea. The killing, as is well understood, standing alone, does not constitute the crime of murder, but, rather, a single link in the chain of testimony to establish that crime.

This case well illustrates the great danger there would be in any system of law that would allow a plea of guilty to be entered up on criminating evidence thus obtained. From the evidence thus extracted from the prisoner, if his statements are all to be relied on, the killing occurred in a quarrel, in which it is evident most of the details are as yet undisclosed, but in the little that does appear, taking his statement as true, the deceased, pending the quarrel, and as part of it, threatened to shoot him. There may be no truth in this part of his statement, and we do not wish to be understood as intimating any opinion on that subject. But this we do say, that if admissions thus obtained could be used for such a purpose, common justice would say that the prisoner should have the benefit of his statement taken as a whole.

For the error indicated the judgment of the court below is reversed, and the cause remanded, with direction to the cir-

cuit court to permit the prisoner to withdraw the plea of guilty and to enter a plea of not guilty, and to proceed with the trial of the cause as in other cases.

*Judgment reversed.*