(No. 13798.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE A. STAMATIDES *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1921—Rehearing denied June 9, 1921.*

1. CRIMINAL ·LAW—*a judge's certificate of proceedings in his presence must be accepted as correct.* On appeal from a judgment and sentence after denial of a motion to withdraw a plea of guilty, the recitals in the certificate of the judge as to what was said and done by him and what occurred in his presence must be accepted as true and correct.

2. SAME—*parties cannot agree to submit issue of guilt or innocence to the court by pleading guilty.* The question of guilt or innocence ·is not an issue under a plea of guilty, and under such plea the parties cannot agree to waive a jury and let the court hear the evidence and determine whether the proof is sufficient to find the defendants guilty, but the court must sentence the defendants after fully instructing them as to the effect of their plea.

3. SAME—*allowance of motion to withdraw plea of guilty rests in discretion of court.* Whether a plea of guilty will be permitted to be withdrawn and a plea of not guilty entered rests within the sound discretion of the court, and if it appears the court has abused its discretion in that respect the judgment will be reversed, but if the plea is understandingly made, the court may, in the exercise of a sound discretion, refuse permission to withdraw it.

4. SAME—*when motion to withdraw plea of guilty is properly denied.* A motion to withdraw a plea of guilty should be granted when it will best serve the ends of justice, and particularly if the

consequences of the plea have not been fully explained or understood; but where the defendant persists in his plea after being fully advised of its consequences it is not an abuse of discretion to deny the motion, which is not made until after the court has heard evidence and has announced that the defendant will be sentenced to the penitentiary.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding.

LITSINGER, HEALY & REID, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

George A. Stamatides and George Douras have sued out this writ of error to review a judgment of the Appellate Court affirming a judgment of the criminal court of Cook county finding them guilty of a criminal offense and sentencing them to pay a fine of $200 each and to imprisonment in the penitentiary for a term not to exceed three years.

Plaintiffs in error will hereafter be referred to as defendants. They were indicted in January, 1916. The indictment charged that they were doing a banking business as partners in Cook county and that they received a deposit at a time when they were insolvent and well knew they were insolvent, whereby the deposit was lost to the depositor. They entered pleas of guilty, judgment was rendered on the pleas, and they were sentenced to pay a fine and to imprisonment in the penitentiary, as before stated. They were arraigned and entered their pleas of guilty August 19, 1918. The cause was not then disposed of but was continued from time to time and evidence heard on various dates until September 27, when final judgment was entered and sentence pronounced. Previous to the final

judgment, and after the court had announced defendants would be sentenced to the penitentiary, their counsel made a motion to withdraw the pleas of guilty and for a trial by jury. The motion was continued for a few days to afford counsel an opportunity to prepare and present it, and it was overruled. The question presented by this record is whether the court abused its discretion in denying that motion.

The reasons relied on in support of the motion are contained in affidavits of defendants and their counsel. First and last, many and very lengthy affidavits were presented and are contained in the bill of exceptions. Defendants contend they were misled by the court and assistant State's attorney Raber into persisting in their pleas of guilty, and their counsel presented an affidavit in which he says the same thing and sets out what he claims the court and assistant State's attorney said that misled him into advising his clients to persist in their pleas of guilty. As the determination of the case must depend very largely on what took place in court it will not be necessary to refer to other affidavits than those of counsel for defendants, the assistant State's attorney, and the certificate of facts made by the trial judge.

The affidavit of counsel for defendants states that Raber, assistant State's attorney, agreed with affiant that if defendants would plead guilty the cause should be heard by the court; that the pleas would be treated as a matter of form and should not prejudice defendants in making any defense they chose nor relieve the State from the burden of proof on any issue under the indictment, and that defendants might have the same benefit under pleas of guilty as under pleas of not guilty as to any question of variance that might arise on the hearing. Affiant stated that he had investigated the evidence, and that the State would not be able to prove a deposit of money as alleged in the indictment but that the proof would show the deposit was of

checks for collection drawn on another bank; that he advised defendants that would be a complete defense and operate as an acquittal, and that they could trust that question to the court for a decision under a plea of guilty as safely as they could to a jury under a plea of not guilty. Affiant further stated that before proceeding with the hearing he and Raber fully apprised the judge of their agreement; that although the judge said if defendants pleaded guilty they would have to do so unconditionally, affiant interpreted the statement as having reference only to the power of the court to inflict the full statutory penalty if convinced from the evidence there was no merit in the defenses or failure of proof. Affiant did not understand that the legal effect of pleas of guilty would be held by the judge to be an admission of guilt by defendants of the charge in the indictment and preclude them from making a defense, and he instructed defendants to plead guilty and to abide by said plea, inasmuch as in his opinion the variance and failure of proof were certain and fatal. Affiant stated he and defendants were further misled into abiding by their pleas by the trial judge entertaining objections to proof on the question of variance and hearing arguments of counsel, and that affiant and defendants were taken by surprise at the conclusion of the trial when the court held variance and failure of proof would not be considered,— that the pleas of guilty admitted the facts alleged in the indictment.

Raber made an affidavit in opposition to the motion, that when the case was called for trial defendants' counsel stated to him he would rather trust the court on a question of penalty than a jury, and after some talk it was agreed between defendants' counsel and affiant that they would enter pleas of guilty. Counsel for defendants said he thought he had a good defense on the question of variance between what the proof would be and the description of the deposit in the indictment. Affiant expressed a contrary opinion,

and it was agreed that defendants might offer any defense they could interpose before a jury. Before the pleas of guilty were entered the court warned defendants of the consequences of such pleas and that they would require the court to sentence each of the defendants to pay a fine in double the amount of the deposit, or to such fine and also imprisonment in the penitentiary from one to three years. Defendants persisted in their pleas, and affiant, as counsel for the People, stated to the court what the proof for the State would show, in order to advise the court as to the penalty. Thereupon counsel for defendants made a statement of what he claimed the proof would show, and stated defendants believed they were solvent at the time the deposit was received, and that there would be a variance between the indictment and the proof of the deposit. Thereupon the court interrupted counsel, and said if defendants pleaded guilty the question of their guilt would not be an issue; that if they claimed they were not guilty a jury would be called to try the issue, but if they pleaded guilty there would be no issue to try but the court would hear evidence in mitigation of the punishment. Counsel for defendants then told the court of the understanding between himself and affiant and that under that agreement the court might find defendants not guilty and discharge them. The court announced he would not hear the case under such an agreement; that he had no power to do so; that there was no such thing as a formal plea of guilty for the purpose of conferring jurisdiction on the court, and if defendants pleaded guilty the court would only hear evidence for the purpose of advising him what penalty should be inflicted. The court then told counsel for defendants, in their presence, that he would permit them to withdraw their pleas of guilty and plead not guilty if they so desired and the case would then be submitted to a jury. Thereupon counsel for defendants stated to the court he desired time to consult with his clients before advising the court as to what

he would do in the premises, and said he would be ready
to inform the court next day. The court announced that
he would give plenty of time and continued the case two
days, when the case was again called, and counsel said to
the court he had advised with his clients and they would
persist in their pleas of guilty. They were again arraigned
and again pleaded guilty. The court again warned them of
the consequences of their pleas, and that it would be the
court's duty to sentence them either to pay a fine or to both
fine and imprisonment in the penitentiary for a period of
from one to three years; that under the pleas of guilty he
would only hear evidence in mitigation of the penalty, and
defendants still persisted in their pleas of guilty. The case
was continued from time to time and evidence heard until
the 16th day of September, 1918, when it came up for the
pronouncement of judgment and sentence. The court stated
the defendants would be sentenced to imprisonment in the
penitentiary, and at that point counsel for defendants in-
terrupted the further announcement of the sentence and
made a motion to withdraw the pleas of guilty and that
the cause be submitted to a jury. Raber further stated in
his affidavit that just before the sentence was about to be
pronounced he had a talk with counsel for defendants, who
said he wondered whether the court would merely fine de-
fendants or whether he would also sentence them to the
penitentiary. He asked affiant what he thought the court
would do, and affiant said he thought the court would sen-
tence them to the penitentiary.

The court made a certificate of facts as they occurred
in his presence, which, in substance, is that the cause was
called for hearing August 19, 1918; that defendants were
arraigned and entered pleas of guilty, whereupon the court
warned them of the nature and consequences of such pleas
and that he would be obliged to sentence each of them to
pay a fine in double the amount of the deposit or to pay
such fine and also to be imprisoned in the penitentiary from

one to three years, and that they persisted in such pleas.
Thereupon counsel for the People made a statement of the
nature of the State's evidence and counsel for defendants
made a statement of what the proof would show, and said
defendants would offer evidence to prove they were solvent
at the time the deposit was made, and that there was a ques-
tion of variance between the allegations of the indictment
as to the deposit and the proof that would be offered by the
State.    Thereupon the court interrupted counsel and told
him no question of solvency or variance could be heard and
determined upon · pleas of guilty;  that under such pleas
the court could only hear evidence to determine what the
penalty should be;  that there was no such thing as a *pro
forma* plea of guilty;  that the Supreme Court had held
that under such a charge as this a jury could not be waived,
and the court would not attempt to do indirectly what he
could not do directly;  that he would not recognize any
agreement between counsel for defendants and the State
whereby the court was to pass on the question of solvency
or of variance between the indictment and proof;  that if
defendants wished those questions passed upon they should
withdraw their pleas and the court would call a jury to try
the case;  that if defendants persisted in their pleas the
only thing the court could do would be to sentence them
after hearing evidence for the sole purpose of determining
what the penalty should be.    The court then stated to each
of defendants and to their counsel that he would continue
the case several days to permit them to determine whether
they wished to withdraw their pleas of guilty.    The cause
was continued to August 21, when defendants and their
counsel again appeared and their counsel stated defendants
would persist in their pleas of guilty.    The court then called
each of the defendants to the bar and again advised them
that upon pleas of guilty he would be obliged to sentence
them either to pay a fine or to pay a fine and be imprisoned
in the penitentiary;  that the court would hear evidence only

for the purpose of determining the punishment to be imposed, and advised defendants they could then withdraw their pleas of guilty if they so desired and submit the case to a jury, but they persisted in their pleas of guilty. Evidence was heard at various times until September 16, 1918, when defendants appeared, accompanied by their counsel, and the court announced that it was the sentence of the court that defendants be sentenced to imprisonment in the penitentiary. Thereupon counsel for the defendants interrupted the court and asked leave to withdraw the pleas of guilty, and the court at the request of counsel continued the case till September 17, 1918, and thereafter to various times till September 27, 1918, when defendants and their counsel appeared and presented a written motion for leave to withdraw the pleas of guilty, and also presented affidavits of defendants and their counsel in support of said motion. The motion was overruled and sentence pronounced on the pleas of guilty.

A bill of exceptions was allowed, presented, signed and filed within the time fixed. On the 14th day of December, 1918, defendants again appeared and through other counsel made a motion to vacate the sentence and judgment, for leave to withdraw the pleas of guilty and substitute pleas of not guilty, and re-instate the case and set it down for trial. Affidavits presented to the court in support of the motion made by the same parties in support of the former motion set up at greater length the same grounds for the motion as were alleged in support of the former motion. That motion was denied and a bill of exceptions allowed. Thereupon the cause was taken by writ of error to the Appellate Court, where the judgment was affirmed and this writ of error was sued out to the Appellate Court.

The question to be determined is whether at the time the court denied the motion to withdraw the pleas of guilty and pronounced judgment and sentence he abused his discretion. If it be determined there was no abuse of dis-

cretion at that time then the second motion was properly denied. What was said and done by the judge and what occurred in his presence and what is recited in his certificate is to be accepted as true and correct. (*Peyton* v. *Village of Morgan Park,* 172 Ill. 102; *Deel* v. *Heiligenstein,* 244 id. 239; *Mayes* v. *People,* 106 id. 306.) It does appear from the affidavits of counsel for defendants and for the State that it was agreed between them before the pleas were entered that defendants could offer their defenses under the pleas of guilty, which to us is an unheard-of practice. When the court was informed of this agreement at the time the pleas were entered he informed the parties that he would not recognize any such agreement; that if defendants pleaded guilty he would be obliged to sentence them to pay a fine, or to imprisonment in the penitentiary, or both; that there would be no issue to be tried and that he would only hear evidence for the purpose of advising him as to the penalty that ought to be fixed, and they were then given the opportunity to withdraw their pleas and plead not guilty. They were advised to do so if they claimed to be innocent. They were given two days' time to confer with their counsel and determine what they wanted to do. They still persisted in their pleas, and were again called to the bar of the court and advised that under the pleas of guilty the court would be obliged to sentence them to pay a fine or to both pay a fine and be imprisoned in the penitentiary; that the court would hear evidence only for the purpose of determining the punishment. They were then again advised to withdraw their pleas of guilty if they desired and submit the case to a jury, but they persisted in their pleas until September 16, when they came before the court for judgment and sentence and the court announced they would be sentenced to imprisonment in the penitentiary, whereupon the defendants' counsel interrupted the court, claimed to have been misled, and for the first time asked leave to withdraw the pleas of guilty. Defendants' coun--

sel was a lawyer of twenty years' experience in the prac-
tice and well acquainted with the practice and procedure
in trials. He and his clients could not have been informed
in plainer and more direct language that the question of
guilt or innocence was not an issue under the pleas of guilty
and that under such pleas the court would be obliged to
sentence them to punishment. It seems plain they and their
counsel so understood and hoped that only a fine would
be imposed. The inference seems entirely warranted that
if that had been the punishment fixed defendants would
have been satisfied. Whether pleas of guilty will be permit-
ted to be withdrawn and pleas of not guilty entered rests
within the sound discretion of the court. (*People* v.
*Walker,* 250 Ill. 427.) It should be granted when it will
best serve the ends of justice, and particularly if the con-
sequences were not fully explained or understood. (*Kro-
lage* v. *People,* 224 Ill. 456.) If it appears the court has
abused its discretion in that respect the judgment will be
reversed, but if the plea is understandingly made, the court
may, in the exercise of a sound discretion, refuse permis-
sion to withdraw it. (*Gardner* v. *People,* 106 Ill. 76; *Mon-
ahan* v. *State,* 135 Ind. 216.) There was in this case no
abuse of discretion by the court. Defendants were given
every opportunity by the court to protect themselves and
chose to speculate what the judgment and sentence would
be. They were plainly and emphatically told they could not
escape a sentence to pay a fine or imprisonment in the peni-
tentiary, or both, if they persisted in their pleas of guilty.
That the punishment was more severe than they had ex-
pected or hoped afforded no ground for the withdrawal of
the pleas of guilty.

The judgment is affirmed.   *Judgment affirmed.*