(No. 30257. )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY L. WILSON, Plaintiff in Error.

*Opinion filed March 18, 1948.*

CONNERS, ECKERT & LIMPERIS, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and C. W. BURTON, State's Attorney, of Edwardsville, (A. AUSTIN LEWIS, of Granite City, and KENNETH F. KELLY, of Alton, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

On June 16, 1943, plaintiff in error pleaded guilty in the circuit court of Madison County to an indictment charg-

ing grand larceny. He was sentenced to the penitentiary for the statutory indeterminate term for such offense of one to ten years. (Ill. Rev. Stat. 1947, chap. 38, par. 387.) He has sued a writ of error out of this court to have the record of his conviction reviewed. The record presented is limited to the placita, indictment, order fixing bail, recital of facts showing arraignment, and the judgment. The grounds urged for reversal are, that (1) in a criminal prosecution the court has a duty to inform the accused of his right to assistance of counsel, and (2) the failure of the court to advise the accused of his right to assistance of counsel deprives him of his liberty without due process of law.

The record shows the indictment was returned May 28, 1943, that it charged plaintiff in error and his codefendant, Alberta Louise Wilson, with having stolen various items of merchandise of a total value of $23.80. On June 16, 1943, both defendants were before the court and each was furnished with a copy of the indictment and lists of witnesses and jurors. Following the recital of such preliminaries in the record, there appears the following: "Defendant Henry Wilson is duly arraigned, says he pleads guilty and defendant Alberta Louise Wilson, by leave of court withdraws plea of not guilty and pleads guilty of said charge. Court fully advises defendants as to their respective rights and consequences, yet defendants so advised, persist in entering pleas of guilty and same so recorded by court and entered on such pleas, court finds said defendants Henry L. Wilson and Alberta Louise Wilson guilty of the crime of larceny in manner and form as charged in the indictment and the age of defendant Henry L. Wilson to be thirty-six years and the defendant Alberta Louise Wilson to be thirty-three years and the value of the property stolen by them to be $23.80." This review is limited to the rights and interest of Henry L. Wilson.

Throughout the history of this court the fundamental law has made provision for the right of every accused to have assistance of counsel. The provisions of section 9 of article VIII of the constitution of 1818, and of section 9 of article XIII of the constitution of 1848 were identical. They were: "That in all prosecutions, the accused hath a right to be heard by himself and counsel." Section 9 of article II of the constitution of 1870 is: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel." It will be noted that the provision of the present constitution differs slightly in language from the two preceding constitutions, but it is the same right that was intended to be protected in each instance. It assures to every accused the right to have the assistance of counsel to advise him as to the nature of the charge preferred, of the plea to enter, and if a plea of not guilty is entered to have counsel prepare and present his defense on the trial.

The first part of section 2 of division XIII of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 730,) was adopted in its present form in 1874 and has been in force continuously since that date. It provides: "Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense. In all cases counsel shall have access to persons confined, and shall have the right to see and consult such persons in private." In 1929, the second paragraph of the section was added. (Laws of 1929, p. 344.) Since it deals exclusively with the appointment of counsel for indigent defendants indicted for a capital offense, its provisions need not be set forth in this case.

In the one hundred thirty years that have passed since the first constitutional provision was adopted, a large number of cases have been before this court involving questions as to whether the accused's right to counsel has been

transgressed upon. It is impossible within the reasonable confines of an opinion to analyze and discuss any considerable number of those cases, but, to demonstrate the care and caution with which an accused's right to counsel has been safeguarded, reference will be made to a few.

*White* v. *People*, 90 Ill. 117, decided in 1878, was a case where the trial court had restricted the time for oral argument to the jury. It was contended the limitation had deprived the defendant of having his case fully and fairly presented. It was said: "The plaintiffs in error had an undoubted right, under the very bill of rights itself, and by the law of the land, to defend by counsel, and to insist such counsel should have reasonable opportunity ·to discuss before the jury both the facts and the law of the case. This was a constitutional and substantial right of which no court could properly deprive them." Also, see *Meredeth* v. *People*, 84 Ill. 479.

In *North* v. *People*, 139 Ill. 81, referring to the part of the Criminal Code above quoted, (par. 730,) it was said: "We are not to assume that this [statute] was intended to be a mere empty formality, and that the counsel thus appointed should be compelled to act without being allowed reasonable time within which to understand the case and prepare the defense." See, also, *Feinberg* v. *People*, 174 Ill. 609; *People* v. *Bopp*, 279 Ill. 184; *People* v. *Brislane*, 295 Ill. 241; *People* v. *Blumenfeld*, 330 Ill. 474; *People* v. *Celmars*, 332 Ill. 113.

In *People* v. *Kurant*, 331 Ill. 470, it was said: "A privilege most important to a person accused of crime, connected with his trial, is to be defended by counsel. [Citation.] If an accused person is to have counsel he should be in a position to make a complete defense." In appointing counsel for an indigent accused, it is the duty of the court to appoint counsel who has sufficient ability and experience to fairly represent the defendant, present his defense and protect him from oppression. (*People* v.

*Blevins,* 251 Ill. 381; Compare *People* v. *Laures,* 289 Ill. 490; *People* v. *Nitti,* 312 Ill. 73.) That an accused may be shown to be guilty does not justify the court's action in denying him an opportunity to present his defense through counsel. *People* v. *Long,* 346 Ill. 646.

Akin to the requirement that an accused shall have the right to counsel is that part of section 4 of division XIII of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 732,) which provides that "In cases where the party pleads guilty such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persists in pleading guilty, such plea shall be received and recorded and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury." In *People* v. *Kurant,* 331 Ill. 470, it was held, that, where an accused had tendered a plea of guilty under a misapprehension as to the consequences of his plea, and immediately after he had obtained the advice of counsel asked leave to change his plea, under such circumstances the request should be granted.

In *People* v. *Kawoleski,* 310 Ill. 498, defendant pleaded guilty to a violation of the Illinois Prohibition Act. He signed a jury waiver and was sentenced to jail on his plea of guilty. About twenty days thereafter, he moved to vacate the judgment and for a new trial. By affidavit filed in support of the motion, he stated that he did not understand the English language "well," that he had no counsel to represent him and was ignorant of the proceedings. The motion was denied by the trial court and on writ of error was affirmed. The substance of the holding was that defendant had not met the burden of proving that by reason of certain particular circumstances, he had not had a fair trial.

In *People* v. *Lavendowski,* 326 Ill. 173, defendant tendered a plea of guilty to violation of the liquor law.

The plea was entered without the aid of counsel and, after counsel had been employed to represent the defendant, a motion was made for leave to withdraw the plea of guilty and in support thereof defendant showed that he did not understand the English language, that he did not know the effect of his plea of guilty, that he did not have counsel, and that the consequences of his plea had not been explained to him. The motion was overruled and defendant was sentenced to jail. On review in this court, it was claimed that the defendant had been deprived of his constitutional right to counsel. In discussing the right of an accused to counsel, and in referring to the constitutional provision and the statutory enactment, it was said that those provisions did "not place upon the court the duty to proffer the services of counsel, but where there has been a motion for leave to withdraw a plea of guilty, the fact that the defendant did not have counsel and was not informed that he could have such assistance, if such is a fact, is a matter which, with all the facts surrounding the case, is to be considered in determining whether it was an abuse of judicial discretion to refuse to permit the withdrawal of the defendant's plea."

The principle announced in the *Lavendowski case* had been applied in several cases prior to that time. In *Gardner v. People,* 106 Ill. 76, the defendant entered a plea of guilty to a charge of murder. He had no counsel, did not understand or speak the English language, the colloquy between the court and the accused being carried on through an interpreter. A few days after the plea of guilty had been entered, counsel was appointed for the accused and immediately an application was made for leave to withdraw the plea of guilty. The motion was denied by the trial court. On review, doubt was expressed as to whether the defendant understood "the difference between a charge of murder and a mere charge of taking life, or that one might be proved guilty of killing another and yet not be

guilty of any offense at all, or at least of the offense of murder." It was held that, under the particular circumstances shown, leave should have been granted to withdraw the plea of guilty.

In *Krolage* v. *People,* 224 Ill. 456, the same principle was applied where the defendant had pleaded guilty to a charge of embezzlement and had been sentenced to the penitentiary. The showing was that he had misunderstood the possibility that he might be sentenced to the penitentiary.

In *People* v. *Kurant,* 331 Ill. 470, defendant entered a plea of guilty to a charge of murder. After the plea had been made, counsel was appointed, presumably to represent the defendant in the taking of testimony in aggravation or mitigation of the crime. Within a few days counsel moved to withdraw the plea of guilty and enter a plea of not guilty. The trial court denied the motion but on review it was held the circumstances under which the plea of guilty had been made, one of which was that he did not have the assistance of counsel, required the granting of the motion. (Also, see *People* v. *Varecha,* 353 Ill. 52.) An application to withdraw a plea of guilty is a matter within the sound discretion of the court but, if the discretion is abused, such action will be reversed on review. In the following cases it was held that there was no abuse of the discretion in denying the motion: *People* v. *Stamatides,* 297 Ill. 582; *People* v. *Bonheim,* 307 Ill. 316.

No case has been cited where, prior to 1944, this court passed upon a question raised on a record such as is presented here. In that year, *People* v. *Childers,* 386 Ill. 312, came to this court by writ of error to review a common-law record. Defendant had been sentenced to the penitentiary in 1935 on a plea of guilty to an indictment charging burglary and larceny. The record was silent as to whether defendant knew prior to the entering of his plea that he had a right to counsel, and if unable to employ counsel that the court would appoint same for him. It

was contended that since the record did not show that the court had advised defendant of his right to counsel and had not offered to appoint counsel, if he was unable to employ same, the judgment should be reversed. There, as in the present case, there was no claim that the accused had asked for counsel and had been denied, nor was any claim made that the defendant was not capable of understanding the nature of the charge and all the possibilities that might accompany a plea of guilty. The opinion in the *Childers case* cited the *Kawoleski* and *Lavendowski cases* with approval and adopted them as precedents for the principle that the court was not required to proffer counsel to a defendant charged with crime. The effect of such holding was that the failure of the judgment record to show such fact did not *ipso facto* destroy such judgment. Since the *Childers case* was decided there have been more than twenty cases before this court involving questions of the same general pattern presented in that case. We have consistently adhered to the principles announced in those earlier cases.

It is now earnestly contended that the principle announced in the *Childers case,* and followed in subsequent cases, should be overruled. It is argued that the constitutional provision and the statute which proclaims an accused's right to counsel are not given their full import and force unless the court, before accepting a plea of guilty, advises the accused of his right to counsel. Such contention, if sustained, would impose a duty on the court in every criminal case of advising a defendant who appeared before him without counsel of his right to counsel and to proffer him counsel to be appointed by the court, if he was not able to employ same.

The important bearing such question has on the fundamental rights of an accused and the frequency with which the question arises has prompted us to re-examine our earlier decisions and to reconsider the whole question in the

light of certain recent decisions of the Supreme Court of the United States which define the requirements of due process under the fourteenth amendment as applied to persons incarcerated under a record such as the one before us.

Plaintiff in error contends for an interpretation and application of section 9 of article II of the constitution and section 2 of division XIII of the Criminal Code which will accord with the construction the Federal courts have given the sixth amendment to the Federal constitution. The pertinent parts of that amendment are that "In all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel for his defense." In *Johnson* v. *Zerbst*, 304 U.S. 458, 82 L. ed. 1461, it was said: "The sixth amendment withholds from Federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life and liberty unless he has or waives the assistance of counsel."

It has long been considered that the first ten amendments to the Federal constitution impose a limitation on Federal legislative and judicial power and that the provisions of such amendments have no effect on States or State courts, (*Spies* v. *Illinois*, 123 U.S. 131, 31 L. ed. 80; *Keith* v. *Henkleman*, 173 Ill. 137,) except insofar as those rights and privileges are within the requirement of the due-process clause of the fourteenth amendment or, as said in *Palko* v. *Connecticut*, 302 U.S. 319, 82 L. ed. 288, "as were implicit in the concept of ordered liberty." Unless the requirements of the sixth amendment are eventually to be declared an essential of due process under the fourteenth amendment (see dissent in *Adamson* v. *California*, 332 U.S. 46, 91 L. ed. 1464,) and thereby binding on the States, the State constitutional provision may be construed without regard to the influence of the construction given the sixth amendment by the Federal courts.

The language of section 9 of article II and of the sixth amendment safeguard the same right. There is no differ-

ence in language which would support a conclusion that the right of an accused to counsel was of any greater extent under one provision than under the other. We find that the difference in the conclusions reached by this court in the State provision and the Federal court on the sixth amendment is more a matter of approach than of any difference in the language of the two provisions.

The rationale of the holdings of this court on 'the right of an accused to counsel under the State provision is that it is assumed an average accused knows of his right to counsel and of his right to have counsel appointed for him if he is unable to procure his own. Experience, based on observation and practice, shows that the average person in the every-day affairs of life, when apprehended for a criminal offense or when his rights become involved in a civil action, resorts to counsel without having to be told of his right to counsel. Acting on such assumption, this court has held that the burden of asserting the right to counsel rests on the accused and, in that sense, it is said in many of the cases that the right of counsel is a right personal to a defendant which he may waive or claim as he himself elects. (*People* v. *Carter,* 398 Ill. 336; *People* v. *Foster,* 394 Ill. 194; *People* v. *Pond,* 390 Ill. 237.) Recognizing the exceptions, it has been held that where it was shown that an accused had, by reason of his lack of understanding of his rights, including the right to counsel, adopted a course detrimental to his case, such ill-advised action should be stricken from the record and the accused given the right to counsel and to proceed with the advice and assistance of counsel. (See *People* v. *Kurant,* 331 Ill. 470; *Krolage* v. *People,* 224 Ill. 456, and *Gardner* v. *People,* 106 Ill. 76.) As a rule, the question has arisen on a motion or petition of the defendant, supported by proof showing his lack of understanding of his right to counsel. If a court has any doubt as to the mental competency of the accused to understand his rights, then due process would

require that the court, on its own motion, advise him as to his right and inform him that if he was not able to procure counsel the court would appoint counsel for him.

In applying the sixth amendment, the Federal courts do not indulge the assumption of competency of the average accused that has been applied by this court. It is tersely stated in *Johnson* v. *Zerbst,* 304 U.S. 458, 82 L. ed. 1461, in the following language: "It [sixth amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." We indulge the same assumption as to the competency of an accused to defend himself but the question raised on this record does not go to plaintiff in error's competency to conduct a defense but is limited to plaintiff in error's knowledge of his right to have the advice and assistance of counsel. There is not a word in the record tending to show that plaintiff in error did not know that he had a right to have the advice of counsel before pleading in the case. It is a well-established principle that all reasonable intendments not contradicted by the record are to be taken in favor of the validity of the judgment, (*People* v. *Throop,* 359 Ill. 354; *People* v. *Gerke,* 332 Ill. 583,) and that he who seeks a reversal of a judgment assumes the burden of showing the illegality of the proceeding which resulted in the judgment against him.

Counsel for plaintiff in error envisions a warning in the opinion of *Foster* v. *Illinois,* 332 U.S. 134, 91 L. ed. 1542, wherein the court says: "It is not for us to suggest that it might be desirable to offer to every accused who desires to plead guilty the opportunities for counsel and to enter with formality upon the record the deliberate disclaimer of his need for counsel because of a full appreciation of the meaning of a plea of guilty as expounded by

responsible judges." We consider such statement, not in the sense of a warning of a future determination if the State law were not changed, but rather to emphasize the difference between State and Federal questions. We think the succeeding sentence supports this interpretation, where it is said: "Our duty does not go beyond safeguarding 'rights essential to a fair hearing' by the States."

We hold that under the State constitution and section 2 of division XIII of the Criminal Code, there was no duty resting upon the court to advise plaintiff in error of his right to counsel before he entered his plea of guilty, and that the absence from the judgment of the explanation of such right to plaintiff in error does not furnish grounds for reversal. This we believe to be in accord with cases in other jurisdictions having constitutional or statutory provisions similar to ours. (See Annotation in 149 A.L.R. 1403.) We adhere to the principles announced in *People* v. *Childers,* 386 Ill. 312, and other cases. As a question of State law, the judgment should be affirmed.

The fourteenth amendment to the Federal constitution is a limitation on the exercise of power by State legislatures and State courts, and it is the duty of a State court to enforce the requirements of that amendment. Questions as to whether plaintiff in error had due process within the meaning of the fourteenth amendment are within the scope of the error assigned in this case. The decisions of the Supreme Court of the United States as to what constitutes due process under the fourteenth amendment control and our discussion now relates to that field.

In *Foster* v. *Illinois,* 332 U.S. 134, 91 L. ed. 1542, the Supreme Court of the United States says that the rationale of the present day application of due process was first expounded in *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158. In the *Powell case* it was said: "Where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance,

feeble-mindedness, illiteracy or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law." To illustrate the necessity of an incompetent accused having a full understanding as to his rights of counsel, it was said in the *Powell case:* "Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceeding against him. Without it, although he is not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true it is of the ignorant and illiterate, or those of feeble intellect."

Assuming that *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158, embodies the scope of the doctrine of due process as applied to an accused's right to counsel, we pass to the next problem as to how the Federal court applies that doctrine to a case such as this. *Foster* v. *Illinois,* 332 U.S. 134, 91 L. ed. 1542, furnishes the answer. When that case was before this court on writ of error, (394 Ill. 194,) we affirmed a judgment which, as here, contained a general recital that the defendants had been apprised of their rights and the effect and consequences of a plea of guilty, but it did not contain any specific recital as to the right to counsel. The Supreme Court of the United States, commenting on such fact said: "In this case there is neither proof nor uncontradicted allegation of any such [referring to *Williams* v. *Kaiser,* 323 U.S. 471, 89 L. ed. 398; *Tom-*

*kins* v. *Missouri,* 323 U.S. 483, 89 L. ed. 407; *De Meerleer* v. *Michigan,* 329 U.S. 663, 91 L. ed. 471; *Haley* v. *Ohio,* —— U.S. ——, 92 L. ed. 239] miscarriage of justice in accepting pleas of guilty. The record of the proceeding plainly imports an observance of due process * * *. There was nothing in the common-law record, on the basis of which the Supreme Court of Illinois rendered its decision, to contradict this account of the proceedings in 1935 [date of sentence.] We thus have in effect the bald claim that, merely because the record does not disclose an offer of counsel to a defendant upon a plea of guilty, although the court before accepting the plea duly advised of his 'rights of trial' and of the consequences of such a plea, he is 'deprived of rights essential to a fair hearing under the Federal Constitution.' *De Meerleer* v. *Michigan,* 329 U.S. 663, 91 L. ed. 471. We reject such a claim. Most incarcerations are upon pleas of guilty, and probably most such pleas have been made without the felt need of counsel * * *. Our duty does not go beyond safeguarding 'rights essential to a fair hearing' by the States."

The prior decisions of this court, which plaintiff in error earnestly contends are founded on a wrong principle and should be overruled, are, on the records presented, in accord with *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158; *Betts* v. *Brady,* 316 U.S. 455, 86 L. ed. 1595, and *Foster* v. *Illinois,* 332 U.S. 134, 91 L. ed. 1542, and there is nothing on the record in this case which would justify a reversal of the judgment of conviction on the ground that plaintiff in error had been denied due process of law by not advising him of his right to counsel before accepting his plea of guilty.

Before concluding this case, reference should be made to the general inclination of defendants, who bring their cases to this court by writ of error to review questions of due process under the fourteenth amendment, to rely upon decisions of the United States rendered in review

of *habeas corpus* proceedings. Analysis of the *habeas corpus* cases shows that the charge that the accused had been denied due process of law was raised in the trial court by allegations in a sworn petition. Reference to two cases (*Williams* v. *Kaiser*, 323 U.S. 471, 89 L. ed. 398; *Tomkins* v. *Missouri*, 323 U.S. 485, 89 L. ed. 398,) will suffice. In the *Williams case*, the allegation in the petition for writ of *habeas corpus* was: "Prior to his conviction and sentence as aforesaid, the petitioner requested the aid of counsel. At the time of his conviction and sentence, as aforesaid, the petitioner was without the aid of counsel, the Court did not make an appointment of counsel, nor did petitioner waive his constitutional right to the aid of counsel, and he was incapable adequately of making his own defense, in consequence of which he was compelled to plead guilty." The allegation in the petition in the *Tomkins case* was: "The petitioner states that in the proceedings in said circuit court * * * he was not represented by counsel, the court did not make an effective appointment of counsel, the petitioner did not waive his constitutional right to the aid of counsel, and he was ignorant of his right to demand counsel in his behalf, and he was incapable adequately of making his own defense." The lower court, and the court of last resort of the State from which those cases came, had held that the allegations of the respective petitions were not sufficient to require an answer and dismissed or denied the petition without requiring an answer or denial of the charge. The Supreme Court of the United States held that such allegations brought the cases within the doctrine of *Powell* v. *Alabama*, 287 U.S. 45, 77 L. ed. 158, and were sufficient to raise a question of fact as to whether the petitioner had been denied due process of law by reason of having not been capable of understanding his right to counsel and not having the right explained to him. Each of the cases was remanded, with directions to require an answer and

452

take evidence, if a question of fact was raised. It will be observed that the court restricted its conclusions to the allegations of the petition and found them sufficient to require an answer and evidence, which they said might result in showing that the claim or denial of due process was without foundation. The issue presented on a petition for writ of *habeas corpus* containing allegations in accordance with the doctrine of *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158, is entirely different from the one presented on the record furnished in this case.

What has been said herein in reference to the constitutional provision and section 2 of division XIII of the Criminal Code applies to noncapital cases. The second subdivision of said section 2, which was added by the amendment of 1929, pertains solely to capital cases and contains a different requirement. See *People* v. *Williams, post,* 452.

The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*