No. 20564.

Samuel Arthur *v*. The People of the State of Colorado.

(393 P.2d 871)

Decided June 22, 1964.

Mr. JIM R. CARRIGAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mrs. AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

SEPTEMBER 19, 1956, the district attorney for El Paso county filed an information against the above named plaintiff in error (hereinafter referred to as defendant) charging him with the crime of forcible rape. The date of the alleged crime was September 14, 1956, and the defendant was taken into custody on that date. On the

20th day of September, 1956, defendant was arraigned on said charge. The record before us shows the following in connection with said arraignment:

"And thereupon the said Defendant being furnished with a certified copy of the Information herein, and a list of the names of the People's witnesses in this case, is arraigned and after reading of the Information is required to plead thereto. Whereupon he answers and says that he is Guilty in manner and form aforesaid as in and by said Information he stands charged. And the effects and consequences of his said Plea being now here fully explained to him by the Court, he still persists therein. Evidence is heard in regard to the circumstances in aggravation and mitigation of the offense charged. Whereupon the Court orders this case continued to October 8th, 1956, at 10 a.m. for pre-sentence investigation."

The Bill of Exceptions contains the following with reference thereto:

"MR. HARDEMAN: I request that the defendant be arraigned.

"(Information read by Clerk)

"CLERK: What say you, Samuel Arthur, guilty or not guilty?

"MR. ARTHUR: Guilty.

"THE COURT: What is the penalty?

"MR. HARDEMAN: Three years to life.

"THE COURT: You are charged in this Information with forcible rape. Before your plea of guilty can be received it is the duty of the Court to advise you as to the penalty of this crime.

"Upon your plea of guilty and if the evidence warrants it, the Court may sentence you to the State Penitentiary for a term of not less than three nor more than life. With this information do you still desire to plead guilty?

"(Defendant nods)"

Thereafter the victim of said crime and a police offi-

cer of the city of Colorado Springs testified concerning the commission of the crime by defendant and his confession thereof. This evidence is part of the record before us and unmistakably establishes an aggravated forcible rape. The court thereupon inquired of the defendant as follows:

"THE COURT: You have heard the testimony that has been given? Is the testimony substantially correct?

"THE DEFENDANT: Yes."

The case was continued by the trial court until October 8 for pre-sentence investigation, for consideration of an application for probation which had been filed by defendant, and for final disposition. At this hearing defendant stated that he had nothing further to add to the statements he had theretofore made. The court denied the application for probation and sentenced defendant to a term of from thirty years to life imprisonment in the state penitentiary.

May 4, 1962, defendant filed a "Motion to Vacate and Set Aside Conviction and Sentence Under Rule 35 (b)." The rule under which the motion was filed was adopted by this court in 1961 and contains provisions for post conviction remedies available to prisoners in custody. It is alleged in said motion that the imprisonment of petitioner is illegal and "contrary to his rights to due process of law under the Fourteenth Amendment to the Federal Constitution and under Colorado law" and that at no time from petitioner's arrest to his incarceration did he have advice or assistance of counsel;

"3. That the violation of the petitioner's constitutional rights was of a sort not effectively subject to review on writ of error because the violation itself operated to prevent review.

"4. That the petitioner is not in fact guilty of rape by force and violence as charged in the information filed against him in view of the facts detailed in his affidavit, which is filed with this motion."

May 11, 1962, the district court conducted a hearing

192

on said motion at which evidence of defendant was taken together with that of three witnesses called by the people. The court denied the motion and defendant, after motion for new trial was heard and denied, brought the case to this court by writ of error.

█ The single question which is argued by counsel for defendant may be stated thus:

*Did the conviction and sentence of this defendant, without advising him of his right to counsel or offering or providing the assistance of counsel, deprive him of his right to due process of law guaranteed by the constitutions of the United States and the State of Colorado?*

The question is answered in the negative. It is important to remember that the crime for which defendant was convicted was committed September 14, 1956, and that his plea of guilty was entered six days thereafter and the judgment of the court was entered October 8, 1956.

██ The propriety of the proceedings conducted by the Honorable John M. Meikle must be determined upon the well settled law as it existed on the date of the judgment. Under the applicable law in Colorado at that time, it is clear that the failure of a record on writ of error to disclose that the defendant was advised of his right to counsel, or an offer to provide the assistance of counsel, did not deprive him of due process of law.

At the time judgment was entered and sentence imposed in this case, *Kelley v. People,* 120 Colo. 1, 206 P.2d 337 (1949) was the leading Colorado case on this subject. While the *Kelley* case is procedurally distinguishable from the case at bar, there is no material variance in the facts and circumstances giving rise to the constitutional attack. From that opinion we quote the following:

"The proceedings adopted in this case, resulting in the conviction of the defendant, were not in conflict with constitutional and statutory provisions of the State of Colorado. *People v. Wilson,* 399 Ill. 437, 78 N.E. (2d) 514.

Compliance with Colorado law would seem to satisfy the due process requirement of the Fourteenth Amendment *unless the Colorado procedure is inconsistent 'with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as "law of the land." '* (Citing cases)." (Emphasis supplied.)

The court found no such inconsistency. It held:

"However advisable it might be to require the record to show that an accused person was informed concerning his right to counsel, neither the Constitution nor the statutes of Colorado require such a showing, and under the circumstances of this case its asserted absence is not a denial of due process of law under the Fourteenth Amendment to the Constitution of the United States."

The above language was therefore approved in *Freeman v. Tinsley,* 135 Colo. 62, 308 P.2d 220 (decided March 11, 1957).

The *Kelley* case clearly stated the law of Colorado governing arraignment procedures at the time judgment entered in this case. At that time Rule 11 (a) Colorado Rules of Criminal Procedure, requiring that persons accused shall be advised concerning their right to counsel, was nonexistent. There is nothing in the opinion in the *Kelley* case that is out of harmony with the then current pronouncements of the Supreme Court of the United States. That opinion relied on *Bute v. Illinois,* 333 U. S. 640, 68 Sup. Ct. 763, 92 L. Ed. 986, from which we quote the following:

"The present case, on the other hand, illustrates equally well the kind of judgments by a state court that should not be invalidated as lacking in the due process of law required by the Fourteenth Amendment. This is so, although the procedure followed, in 1938, by the state court in the instant cases, as to counsel for the accused might not have satisfied the practice then required of a federal court in the case of comparable federal crimes. The Fourteenth Amendment, however, does not .

say that no state shall deprive any person of liberty without following the *federal* process of law as prescribed for the federal courts in comparable federal cases."

The *Bute* case was decided by the U. S. Supreme Court in April, 1948. In December of that year, the court handed down its decision in *Uveges v. Pennsylvania,* 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127, in which it considered the question of appointment of counsel in noncapital felony cases. The necessity for appointment of counsel in capital cases had already been examined and determined in *Powell v. Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). In *Uveges,* the court stated, as to noncapital cases:

"Where the gravity of the crime and other factors — such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto — render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, * * * the accused must have legal assistance under the Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not."

*Kelley v. People,* supra, was decided by the Colorado Supreme Court on April 25, 1949. Both the *Bute* and the *Uveges* cases had been handed down by the U. S. Supreme Court just prior to that time and were considered in the conclusion reached by this court.

We have no hesitancy in asserting that under Colorado law and under federal law as it was settled at the time of the entry of judgment, there was no denial of due process of law in this case. After the lapse of eight years defendant is now asking this court to declare that the federal courts have now determined that the Fourteenth Amendment requires state courts to inform accused persons of the right to counsel under penalty of invalidation of every past nonconforming judgment

heretofore imposed by state courts. The magnitude of this request and the ramifications of such a holding by this court are most apparent. Such a conclusion would render suspect numerous past judgments of the district courts of this state notwithstanding that they were entered in full conformity with state and federal law as it existed at the time of judgment.

■ Assuming, arguendo, that the Supreme Court of the United States has brought about a change in the law and does not intend hereafter to give effect to the decisions of that court as it was constituted at the time the opinion in *Bute v. Illinois,* supra, was announced, we cannot believe that it is the intention of the present high court that the new law shall be given retrospective effect and every convict who entered a plea of guilty to crime under the old standards of due process be thus encouraged to sign an affidavit that he was not informed that he could have a lawyer, and seek his release from confinement.

■ The application for probation which was filed by defendant contains his own representations that he was more than twenty years of age at the time of the crime; that he had finished eleven grades of school; that he had completed three years army service, the most recent of which was with a medical detachment at the United States Army Hospital at Fort Carson; that he had been a "soldier, and had been a farmer and custodian, and also a bellhop." His testimony at the time of the hearing on his motion was that, "After I went into the service I worked as a medical technician." His belated claim, following recent decisions of the Supreme Court of the United States, that when he was arraigned on the charge he didn't understand what was meant by the charge of "rape by force and violence" is so ridiculous as to be unworthy of belief. At the hearing on May 11, 1962, he gave the following testimony:

"Q. Well, why did you think you were being taken before the Court?

"A. Oh, I was told I was going to Court on this charge.

"Q. What charge was this?

"A. Rape by force and violence.

"Q. And did you at that time understand what was meant by rape by force and violence?

"A. No, sir.

The trial court was not impressed with this statement. Neither are we. On cross-examination defendant stated:

"Q. Do you know what rape means?

"A. No, sir.

"Q. You don't know what rape means?

"A. Rape means having intercourse with a lady without her consent.

"Q. Do you know what force and violence means?

"A. Force means you force her under her will, and violence means bodily harm."

The record before us falls far short of showing a denial of due process of law when tested by the criteria announced by the Supreme Court of the United States in *Uveges v. Pennsylvania,* supra.

The judgment is affirmed.